The Chancellor.
The complainant, being the owner of the Columbia House Hotel at Cape Island, with its appurtenances, and of the furniture therein, and being in possession of the premises, by an indenture bearing date on the seventh of June, 1860, leased the real estate to James H. Laird, for the term of throe years from the first of May, 1860, at the yearly rent of $5000, payable in equal instalments, on the fifteenth day of July and thirty-first day of August in each year, and sold and transferred to the lessee the furniture and other household articles for the sum of $5563.42. Laird, the lessee, as a collateral security for the punctual payment of the rent, resold and retransferred to the lessor all of said furniture and other household articles, and also sold, assigned, and transferred, and covenanted and agreed to sell, assign, and transfer, all other articles of furniture which the lessee should purchase and place, or cause to ba purchased and placed upon said demised premises during said term, it being then known to and contemplated by said parties that it would be necessary for the lessee to purchase and place a large amount of furniture on said premises, in addition to that which was then there: and it being the agreement and intention of said parties that when and so often as any additional furniture should be purchased and placed on the premises by the lessee, it should be deemed and considered as belonging to the complainant as collateral *412 security for the payment of said rent. And the lessee, among other things, covenanted and agreed with the lessor that the said furniture and other household articles, as well that which then was on said premises as that which should thereafter be placed thereon by the léssee, should not be sold or otherwise disposed of, or removed from said premises during the term, but should remain thereon, as the property of the complainant, as collateral security for the payment of said rent.
The bill charges that, in pursuance of the lease, the lessee entered upon the possession and enjoyment of the premises, and that large arrears of rent are due to the complainant; that after the execution of the lease, the lessee, as had been contemplated, purchased and placed on the demised premises a large amount of furniture, of the value of about $5000, in addition to that purchased of the complainant, which still remains thereon. The complainant insists that, by virtue of his contract with the lessee, all the said furniture belongs to him as collateral security for the payment of the rent, and that it cannot lawfully be sold or removed from the said premises by the said lessee, or by virtue of any process or proceeding against him.
The bill further charges, that sundry judgments at law have been recovered against the lessee, and that, by virtue of executions issued thereon, the sheriff of the county of Cape May has levied upon the said furniture'on the demised premises, and advertised the same for sale. The bill prays that an injunction may be issued to restrain the sheriff from selling the said furniture, or any part thereof, and from removing the same from the demised premises. An injunction issued pursuant to the prayer of the bill. The defendant now moves to dissolve the injunction for want of equity in the bill.
The question at issue turns upon the validity and effect of the contract between the complainant and Laird relative to the furniture and other household articles specified in the agreement. As to so much of the furniture as was sold by the *413 complainant to Laird, and which was upon the premises at the date of the lease, the validity of the contract is not called in question. But in regard to that part of the furniture which was not at the time owned by the lessee, but which it was then contemplated should thereafter be purchased and placed upon the premises, it is insisted that the contract is invalid and inoperative.
The design of restraining proceedings at law by injunction out of equity is to prevent an unfair use being made of the process of a court of law in order to deprive another party of his just rights. 2 Story's Eq. Jur., § 875; 1 Eden on Inj. (Waterman) 15, note.
To authorize the interference of the court, the complainant must show by his bill the existence of a right, legal or equitable, and the danger of a deprivation of that right.
No fraud is imputed to the parties in the making of the agreement. It must be assumed that the contract was made in good faith, and for the purpose of securing a bona fide debt thereafter to grow due.
The objection is, that a valid sale or transfer cannot be made of chattels which at the time of the contract are not owned by the vendor, and have no actual or potential existence. It is clear that, if valid at all, the contract must be valid as a chattel mortgage.
It is not a pledge. These chattels were not delivered, and were not capable of delivery at the time of the contract. They had no existence.
At the common law, there cannot be a technical pledge of property not then in existence or to be acquired by the pledgor in futuro. Story on Bailments, § 286, 294.
It is equally clear that the contract cannot operate as a legal sale or mortgage of the chattels. To constitute a valid sale at law, the vendor must have a present property, either actual or potential, in the thing sold. Grantham v. Hawley, Hobart’s R. 132; Co. Litt. 265, a, note 1; Robinson v. Macdonell, o Maule & S. 228; 2 Kent’s Com. 468; 1 Parsons on Con. 437; Story on Sales, § 185, 186.
*414 It is not necessary that the vendor should have the actual property, or that the chattel should have an actual existence. It is. enough that he have it potentially. The distinction was taken in the early case of Grantham v. Hawley, already referred to. The lessor in that case covenanted that the lessee of a term might take the corn that should be growing at the end of the term. It was held that the words were good to transfer the property as soon as it was extant, the lessor of the land having the crops not actually but potentially.
So it was said, a parson may grant all the tithes of wool that he may have in a certain year. But a man cannot grant all the wool that shall grow upon his sheep that .he shall hereafter buy, for there he hath it neither actually nor potentially. The distinction will be found recognised in most of the leading cases, and fully stated by the elementary writers already cited.
In this case the lessee had neither actual nor potential property in the chattels mortgaged. They were articles which it was contemplated should be thereafter purchased by the lessee. And the agreement is, that when and so often as any additional furniture shall be purchased and placed on the premises by the lessee, it shall belong to the lessor as collateral security for the payment of the rent, and shall not be sold or otherwise disposed of or removed from the premises during the term.
It will be assumed, as the authorities clearly establish, that the agreement does not constitute a valid'transfer or mortgage at law of the after acquired chattels.
The real question is, whether the contract creates an equitable mortgage of the chattels which a court of equity will enforce and protect as against a subsequent execution creditor.
In the case of Langton v. Horton, 1 Hare 549, this question was carefully examined and decided by Vice Chancellor Wigram. The owner of a whaling ship, then on her voyage to the South seas, in order to secure to the assignees certain *415 indebtedness for advances, assigned the ship, with her appurtenances, and also all oil and head matter and other cargo which might be caught and brought home in the said ship on and from her then present voyage. It was held that the assignment was, as against the assignor, a valid assignment in equity, as well of the future cargo to he taken during the particular voyage as of the cargo, if any, which existed at the time of the assignment; and the master, having delivered up possession of the ship and cargo to the mortgagees immediately upon his return from the voyage, it was further held, that the equitable title of the mortgagees to the cargo was perfected, and could not be defeated by a judgment creditor of the assignor who afterwards sued out a writ of fieri facias, and proceeded to take the ship and cargo in execution. It may be suggested that the owner of the ship might be deemed to have a potential ownership in the whales to be thereafter caught during that particular voyage, and that upon this ground the assignment might be held valid at law. It was held otherwise, and a similar assignment was declared to be invalid at law by Lord Ellenborough, in Robinson v. Macdonell, 5 Maule & Sel. 228. But if by any latitude of interpretation that view might be taken, it manifestly did not influence the result of the cause.
In the course of his opinion, the Vice Chancellor says: “ I lay out of view all questions as to the operation of the instrument at law, and look at the case only as a question in equity.” And again he says: “ I rely in this case on the general principle, that there having been such a contract as would in equity entitle the plaintiffs, as against the owner, to the cargo when it arrived, and the title under that contract having been perfected by a possession lawfully taken under the deed, which there is no attempt on the part of the owner to impeach, the subsequent judgment creditor cannot take that property from the plaintiffs.” It may be again suggested that there is this further dissimilarity between the cases. In the reported case, the ship and cargo, on her return from the voyage, was delivered to the mortgagees, and thus the equi *416 table title of the mortgagees was perfected; whereas in the present case the chattels were not delivered to the mortgagee, but remained in the possession of the mortgagor. It is true the chattels were not in the actual possession of the lessor, but they were delivered to the lessee upon the demised premises, where, in accordance with the contemplation of the parties and the terms of the agreement, they were to be used by the tenant, and from which they were not to be removed during the continuance of the term. This in no wise affected the validity of the contract, but was a delivery, according to the terms and spirit of the contract, which perfected the equitable title of the mortgagee. In this regard there is no real dissimilarity between the cases.
In the more recent case of Mitchell v. Winslow, 2 Story’s R. 630, this question underwent a more elaborate examination, by Mr. Justice Story, in the Circuit Court of the United States. The court held that to make a grant or assignment valid at law, the thing which is the subject of it must have an existence, actual or potential, at the time of such grant or assignment. But courts of equity support assignments, not only of choses in action, but of contingent interests and expectations, and also of things which have no present actual or potential existence, but rest in mere possibility only.
In that case the mortgagors, being engaged in the manufacture of cutlery in 1839, borrowed,of the mortgagee a sum of money, payable in four years, with interest semiannually, and on the same day gave him a deed of all the machinery in their manufactory, with all the tools and implements of every kind thereunto belonging, together with all the tools and machinery for the use of the said manufactory which they might at any time purchase for four years from that date, and, also all the stock which they might manufacture or purchase during the said four years. In July, 1842, the agent of the mortgagee took possession of the property for breach of the condition of the mortgage, including the machinery, tools, and stock in trade which had been made and purchased after the execution of the mortgage. *417 Tlie mortgagors subsequently became bankrupt. The case came before the court upon a petition of the assignee in bankruptcy for an order authorizing him to take possession of the mortgaged chattels. But the court denied the application, holding that such stipulations in a mortgage in regard to property subsequently acquired protect such property from other creditors of the mortgagor.
In the course of a very elaborate opinion, after quoting at some length from the opinion of the Vice Chancellor in Lang ton v. Horton, Judge Story said: “ Now it seems to me that this reasoning is exceedingly cogent and striking, and it stands upon grounds entirely satisfactory and conclusive upon the whole subject.” And as the result of his investigation, he adds: “ It seems to me the clear result of all the authorities, that wherever the parties by their contract intended to create a positive lien or charge, either upon real or personal property, whether then owned by the assignor or not, or if personal property, whether it is then in esse or not, it attaches in equity as a lien or charge upon the particular property, as soon as tlie assignor or contractor acquires a title thereto against the latter, and all persons asserting a claim thereto under him, either voluntarily or with notice, or in bankruptcy.” These cases, I think, in principle clearly control the present case, and I am quite satisfied to rest my conclusion upon their authority. It would be difficult indeed, upon a question of equity, to cite higher authority, upon either side of the Atlantic, than the eminent judges whose opinions have been referred to.
A further question occurs, viz. whether, admitting the equitable mortgage to be valid against the mortgagor, and all persons claiming under him with notice, it will be enforced against a subsequent judgment creditor of the mortgagor. It was so held by Vice Chancellor Wigram in the case of Langton v. Horton, already cited. The subject after-wards underwent a more elaborate examination by the same learned judge, in the case of Whitworth v. Gaugain, 3 Hare *418 416, where the grounds of his conclusion are clearly and convincingly stated.
As a chattel mortgage is not required by the laws of this state to be recorded, the decision can in no wise conflict with the policy of our registry act.
It was further urged that the court ought not to interfere with the sale by the sheriff upon the ground that the complainant is but a mortgagee, and that the sheriff may lawfully sell the equity of redemption, leaving the rights of the mortgagee undisturbed.
It has been held in this court that the equity of redemption of a mortgagor of chattels in possession may be levied upon and sold by virtue of executions against the mortgagor. Doughten v. Gray, 2 Stock. 328.
Conceding, for the purposes of this cause, the validity of this doctrine in its fullest extent — admitting the legal right of an execution creditor to levy upon and sell the equity of redemption — will a court of equity permit that right to be exercised where of necessity it will greatly impair, if not utterly destroy the rights of the mortgagee? Upon this subject, I think there can be no question. To permit this property to be sold under execution subject to the rights of the mortgagee must of necessity be prejudicial to the interests both of the mortgagor and mortgagee. The property so purqhased will never command a fair price. It is uncertain whether the mortgagor will have any, and if any what interest in the chattels, after the satisfaction of the mortgage debt. Every article would be liable to be withdrawn from the hands of the purchaser to satisfy the claim of the mortgagee. The rights of the mortgagee will be most materially affected by a sale, because it will be extremely difficult, if not impossible, to follow the chattels sold into the hands of various purchasers. Litigation to enforce a recovery would be indefinitely multiplied. The claims may be lost by the insolvency of the purchasers, and the lien may be impaired or destroyed by intervening equities arising from bona fide sales of the property to other purchasers without *419 notice. To prevent irreparable mischiefs and a multiplicity of suits, and to insure the lien of the mortgage from being seriously imperilled, an injunction to restrain a sale by the sheriff would seem absolutely necessary. It is on this ground that courts of equity restrain by injunction the sale of the interest of one partner in the partnership property under an execution at law against such partner, though the validity of the levy subject to the rights of the creditors of the partnership is not questioned. 1 Story’s Eq. Jur., § 678, and cases there cited; Story on Part. 264.
To permit the sale, and yet enjoin the removal of the property by the purchaser, as was proposed upon the argument, would be but an imperfect remedy for the evils to the mortgagee, while it would enhance the loss of the mortgagor. Yo bona fide purchaser would be willing to purchase under such restriction.
The motion to dissolve the injunction is denied with costs.