Herbert *v.* Mechanics Building and Loan Association.

# NOVEMBER TERM, 1864.

JOHN B. HERBERT, appellant, and THE MECHANICS BUILDING AND LOAN ASSOCIATION OF NEW BRUNSWICK and others, respondents.

1. A member of a building and loan association executed to it, as security for a loan, a mortgage, and as collateral thereto, assigned over ten shares of its stock of which he was the owner; subsequently he executed a mortgage on the same premises to H. and after that conveyed to him the mortgaged premises in fee. Judgments were then obtained against the mortgagor, and the ten shares of stock levied on. *Held*, that the equity which H. had acquired, as against the mortgagor and the association, to have the assets so marshaled that the debt of the association should be paid primarily out of the ten shares of stock, could not be impaired or affected by the subsequent intervention of the judgment creditors.

2. In the marshaling of assets, mere judgment creditors do not occupy the same vantage ground with *bona fide* purchasers for a valuable consideration, without notice.

3. The general rule is, that the right of the creditor to marshal the assets of the debtor, is absolute against the debtor himself, and cannot be taken away by the subsequent action of other creditors.

4. The present case, upon all the other points as reported in 1 *McCarter* 219, affirmed.

On the 7th of July, 1856, John B. Conover executed a mortgage to the Mechanics Building and Loan Association of New Brunswick, to secure the payment of certain moneys mentioned in the condition of a bond, bearing even date with the mortgage. Conover, at this time, was a member of the above named company, and owned ten shares of its capital stock, which, in conformity to the constitution of the association, he assigned to the company as collateral security to the mortgage debt. On the 30th of March, 1860, Conover mortgaged the same premises, with other lands, to John B. Herbert, the appellant, to secure a debt which he owed him, and on the 10th of September following, being in failing circumstances, he conveyed the mortgaged premises in fee, to Herbert, and the residue of his real estate to other parties.

2 T*

Subsequent to the mortgage and conveyance to Herbert, judgments at law were recovered against Conover, and executions being issued thereon, were levied on the ten shares of stock above mentioned. It appeared in the case that Conover was insolvent.

Mr. A. V. Schenck and Mr. J. P. Stockton, for appellant.

Mr. Strong and Mr. Leupp, for respondents.

The opinion of the court was delivered by

THE CHIEF JUSTICE.  The bill in this case was exhibited by the Mechanics Building and Loan Association of New Brunswick, to foreclose a certain mortgage given to it by John B. Conover.  At ·the time of the execution of this instrument, the mortgagor was a corporator, and in compliance with a requirement to that effect in the charter of the company, assigned to it ten shares 'of its capital stock, of which he was the owner, as collateral security to the mortgage debt.  Subsequent to the creation of these securities, Conover executed a second mortgage on the same premises included in the first mortgage, and embracing also certain other lands, to John B. Herbert, the appellant, and, at a still later date, being in failing circumstances, he conveyed the mortgaged premises in fee, to the appellant.  Several judgments having been afterwards obtained against Conover, by virtue of executions issued thereon the ten shares of stock above mentioned were levied on.

It is obvious that this conjuncture of facts presents for consideration the equitable conditions of the ten shares of stock, arising out of the claims of the appellant, Herbert, and those of the judgment creditors.

This stock is a pledge in the hands of the Mechanics Building and Loan Association, and is collateral to their mortgage.  The right of this company to resort, if necessary, for the collection of the debt due them, to both the mortgaged premises and the stock is admitted, but Herbert, as second mortgagee of the land, and owner of the equity of

redemption, insists that the company should be compelled to exhaust the stock before going to the land. On the other hand, the judgment creditors contend that, by the established rules of equitable distribution, the converse of this should be done, and that the land, being the primary security, should be first applied.

The due settlement of this point of dissension would seem to depend entirely on the fact, whether the equitable rights of the appellant were, at the time of the rendition of the judgments, so fixed and established as not to be liable to be affected by the subsequent action of third parties. It is quite certain, that at such time the appellant had the right in equity to require the first mortgagee to look, primarily, to the stock in question. Before the judgments were entered, the relative condition of the first and second encumbrancer was clear, definite, and in every respect incontestable. The circumstances, as they then stood, presented, with entire simplicity, the ordinary case of the elder creditor possessed of two securities, only one of which was subject to the lien of the junior creditor; the right, therefore, of the latter to demand that the former should apply, in the first place, the security peculiar to himself, falls within one of the most familiar principles by which justice is dispensed in courts of equity. The sole inquiry, then, as above intimated, seems to be, did the entry of the judgments and the levy by execution on the stock disturb these equitable relations?

As introductory to all reasoning on this subject, it is proper to premise that judgment creditors do not occupy the vantage ground of *bona fide* purchasers for a valuable consideration, without notice. That an honest and innocent purchaser of the stock in question, after the equities of the second mortgagee had attached to it, would hold it discharged from such latent equities, I entertain no doubt. This was the ground of decision in the case of *Reilly* v. *Mayer*, 1 *Beas.* 55. Assuming, what perhaps is not entirely unquestionable, that the purchaser in that case acquired the property without notice, either actual or constructive, of the

prior equities, that adjudication rests in satisfactory reasons. It bears strict analogy to that class of cases which sustain the proposition, that if the holder of the two funds, only one of which is common to himself and another creditor, release the common fund, in such case, in the event of the security retained proving insufficient to the payment of both claims, the loss will not fall on the elder creditor executing the release, provided he acted in good faith, and in ignorance of the subordinate rights.    Every fair purchase has always been protected by the law with peculiar diligence.    This results, in part, from the nature of the transaction, and to a certain extent from considerations of general convenience. He who pays the price on a sale, justly, and with honest intentions, acquires, in natural morality, the highest possible title to the thing purchased; and it has, at least in modern times, been considered highly promotive of the public welfare, that the circulation of property should be free from secret liens and latent trusts.    Hence the doctrine, so much favored in a court of equity, of the inviolable nature of the defence of a *bona fide* purchase, without notice, for a valuable consideration.    But a creditor who has done nothing more than to convert his debt, subsisting in the form of a contract, into a judgment, has no claim but that of diligence, to the favor of equity.    Neither natural justice nor public policy enacts a preference for him over adverse claimants. He has consequently never been treated as a purchaser for value.    He can, under his judgment, levy on execution all that belonged to his debtor, but he can take nothing more. He simply represents the debtor, and he takes the property as the debtor held it.    This is the language of the authorities.    Thus in *Newlands* v. *Paynter*, 4 *Mylne & C.* 408, the interest of the *cestui que trust* was protected against the judgment creditor of the trustee.    In *Lodge* v. *Lyscley*, 4 *Sim.* 70, the equitable interest of the purchaser for value before conveyance, was preferred to the claim of the judgment creditor of the vendor.    And in *Whitworth* v. *Gaugain*, 3 *Hare R.* 416, it was explicitly held that a judgment

creditor is not a purchaser for value in the contemplation of a court of equity.

Regarding, then, the liens of the executions in this case, as destitute of those qualities which impart excellence and give preference to the equity of a purchaser, upon what ground is it that the securities in question are to be marshaled in favor of the creditors by judgment? The circumstances are such that all the parties interested must, of necessity, appeal to the equitable discretion of the court. Their relative positions are these: the complainants, who are possessed of two securities—the mortgaged land and the shares of stock—are in a court of equity, praying that they may be aided to make their debt out of one or both funds; the appellant is also present, setting up his mortgage on the land, and requesting that the complainant's debt should be cast as far as practicable on the stock; the judgment creditors, at this point, intervene, and insist that this stock shall be preserved for them. It is obvious that the legal right is in the complainant, the building and loan association, to appropriate whichever fund it may see fit, and thus disappoint, at will, either claimant. The second mortgagee and the judgment creditors both, as their sole means of protection, apply to the power of the court to control this arbitrary discretion of the company, and conform it to the standard of equity. As the court is thus bound to arbitrate and dispense these funds among the rival litigants, the sequence would seem to be undeniable, that such distribution must be altogether equitable and in strict harmony with the maxims which prevail in a court of conscience. The claimants in this case are all creditors; their rights, therefore, do not differ in kind. But the appellant obtained the first equity; and it is an established axiom, when the equities are equal, priority in time entitles to the preference. Can the judgment creditors displace this prior equity? Why? But for them the appellant would have obtained, without question, what he claims. Until they intermeddled, his interest certainly was not defeasible either by the willful action of the

mortgagor or that of the prior mortgagee. It has been noted that his equity could not have stood against the eminent superiority of a *bona fide* purchaser. But it is difficult to imagine why he is to give way to a creditor who has merely obtained a judgment. It is certain that, as a general thing, equitable interests are not thus subordinated to after acquired liens. The instance before referred to, of the purchaser of real estate, who has paid the consideration before obtaining a conveyance, being protected against a judgment subsequently taken against his vendor, is an illustration of the usual course of proceeding. It is undeniably true that assets will not be marshaled to the injury of a party over whom he who asks the aid of the court has no advantage. But here the appellant has the advantage in point of time; and it is the judgment creditors who demand that superiority of effect shall be given to their equity, which is subsequent. To make judgments thus paramount to prior equitable liens, would be to establish a rule of very great practical importance, and one which would be possessed of most comprehensive energy. It would be difficult to restrain it, if system be preserved, within narrower bounds than the whole field of marshaling assets and securities. And yet it can scarcely be applied to one section of such field without incongruity with adjudged cases. That after acquired rights give place to precedent ones, is the general gradation established by a long line of adjudications. If a judgment creditor by specialty, absorb the personal estate of the decedent to the detriment of legatees, the latter will be subrogated to the rights of the former; that is, the equity of the legatees, as it existed at the death of the testator, to require the specialty debts to be raised out of the land, in which they have no interest, instead of out of the personalty, which is the fund to which they look for payment, cannot be defeated at the mere volition of a creditor. *Hanby* v. *Roberts, Amb.* 128. So, where lands were mortgaged, and a part of them afterwards sold by the mortgagor, it was held, that the part so purchased was not bound to contribute to the payment of

the mortgage, in relief of a party who had purchased the residue of the premises under a sale made by force of a judgment later in time than the first conveyance; that is, such judgment and sale were not permitted to affect the prior equities. *Gill* v. *Lyons et al.,* 1 *Johns. Ch. R.* 446. And again, to the same purport, is the case of *Reynolds* v. *Tooker,* 18 *Wend.* 591. The question there was, whether a judgment against a ship builder should, in the first instance, be cast on a vessel which had been bought and paid for, but not delivered before the entering of the judgment, in order to leave other property for the satisfaction of younger judgments; but the court rejected the application, on the ground that the equities of those who had paid for the vessel attached before such younger judgments, and that the precedent right could not be divested by any diligence of creditors, or any act in their favor by the debtor, which was subsequent.

In *Averall* v. *Wade, Lloyd & Goold* 252, the same principle was adopted. In that case, a party being seized of several estates, and indebted by judgment, settled one of them for valuable consideration, with a covenant against encumbrances, and subsequently confessed other judgments. It was, under these circumstances, held that the prior judgments should be thrown on the unsettled estates, and that the later judgment was possessed of no equity which could override that of the parties taking under the settlement. Sir Edward Sugden, who decided this case, sums up his reasoning on this point in these words: "The result on the whole is, that there is no right to throw any part of the first judgment on the settled estate, but that, on the contrary, that estate had a right to be indemnified against it, at the expense of the unsettled estates, and no subsequent judgment creditor can disturb that right after it has once attached." For further recognition and exemplification of the same doctrine, see the following cases. *Withers* v. *Carter,* 4 *Grattan* 407; *Ziegler* v. *Long,* 2 *Watts* 205; *Bruner's Appeal,* 7 *Watts & S.* 269; *Wise* v. *Shepherd,* 13 *Illinois* 41.

The rule established by these decisions will, upon exami-

nation, be found to be, that the right of the creditor to marshal the assets of the debtor, is absolute as to the debtor himself, and that although it is subject to the legal and equitable claims of prior creditors, it cannot be impaired or, in any respect, injuriously affected, by the intervention of those of a later date. This course of adjudication seems to me correct in principle and salutary in its operation, and I therefore am constrained to think that the decree appealed from is erroneous, in failing to enforce the superior equity of the appellant to have the stock primarily appropriated to the satisfaction of the first mortgage.

The point above discussed appears to have been considered a subordinate one in the court below, the important questions being those which relate to the rights of the parties, springing out of the organization and by-laws of the building and loan association. In the views entertained by the Chancellor upon these several matters, I fully concur, and think the decree should be reversed only in the particular above specified.