The bill is filed by the executors of a deceased copartner against the surviving copartner and his judgment creditors. Its object is to subject to the liquidation of the partnership debts, including the equities of the complainants on a settlement of the partnership accounts between them and the surviving partner, a certain parcel of real estate the title to which stood upon the records in the name of the deceased partner and his survivor as tenants in common.
Three questions are to be solved. First. Was the lot of land in question partnership assets? And, second, if so, is — the right of the judgment creditors superior to that of the complainants? Third. Are the complainants in a position to assert their equity?
I. The facts are that the testator, William Harney, and his son, the defendant William A. Harney, some time prior to the year 1870, entered into copartnership under the firm name of William Harney Son, for the purpose of carrying on the business of general real estate dealers and agents and insurance brokers. The father was a man of considerable means, while the son had little or nothing, but their interest in the profits of the business was equal. Some time prior to February, 1871, Mr. J. D., Jr., had, at the request of the firm, purchased the lot in question, described as Lot No. 88, Block 339, and afterwards known as 379 Grand street, Jersey City, paying for it out of his own money, but upon the understanding that the firm should become jointly interested with him in the purchase. On the 7th of February, 1871, he conveyed two equal undivided one-third parts of the tract to William Harney and William A. Harney, as tenants in common. There is nothing on the face of the deed to indicate that it was intended to be held by them as partners. It was, in fact, paid for with partnership moneys, and the son, *Page 699 
who was bookkeeper for the firm, in order to make his books balance, charged one-half of the cost to his father and one-half to himself. That was the first purchase of real estate made by the firm, and up to that time they had no account with "real estate" opened on their books.
The account stood in that shape until the year 1875, when the firm made further and quite extensive purchases of real estate, and at once opened an account with "real estate," and charged to it the cost of all their recent purchases, and also two-thirds of the lot in question at a valuation of $2,000, and in the statement of assets and liabilities of the firm made up December 31st, 1875, the lot appears among eight or ten others, and is appraised at $2,000 for the two-thirds interest. At the same time each of the partners was credited on his ledger account with one-half of that sum, or $1,000 for one-third of the lot in question. All the entries in the books are in the handwriting of William A. Harney, and in his account on the ledger of William Harney Son, at the head of which are the words "William A. Harney," is found, under date of December 31st, 1875, a credit as follows: "Cash for one-third Lot 88, Block 339 [the lot in question], $1,000." It was so carried, appearing in each one of the annual statements of assets and liabilities, until the death of' William Harney, which occurred April 7th, 1890. In the meantime divers improvements had been made upon it at the expense of the partnership, most of them before it was actually carried to real estate account. All the rents were put into partnership account, and the taxes, repairs and improvements paid out of partnership funds, and on the 31st of December, 1889, it appears in the annual statement of assets and liabilities at a valuation of $2,333.33.
This evidence, which is quite similar to that in Baldwin v.Johnson, Sax. 441, shows in the clearest and most satisfactory manner that this was partnership property. The entry on the books of the firm, made by William A. Harney, of a credit to himself of $1,000 for his share in the land, amounted to a sale and conveyance in equity by him to the firm for cash paid. And while the authorities seem to hold that parol proof is competent *Page 700 
to prove that real estate standing in the name of either one or all of the partners of the copartnership as individuals is actual partnership property, it is unnecessary to resort to that doctrine in this case, because the entry on the ledger in the handwriting of William A. Harney, in which he credits himself with the price of one-third of this lot, is a part of other entries at the head of which stands the name "William A. Harney," in William A. Harney's handwriting, and the authorities seem to be clear that such an entry is sufficient. Newkirk v. Place, 2 Dick. Ch.Rep. 477 (at p. 486), and cases cited.
At the death of William Harney, April 7th, 1890, the partnership as such was insolvent according to a statement on the books made up at that time, but the estate of William Harney was worth in the neighborhood of $100,000. The total indebtedness of the firm was $7,996.88, composed of four items, one of which was $1,500 due to the defendant the First National Bank of Jersey City. The total value of the assets, including the two-thirds interest in the lot in question, was $4,783.22, leaving a deficiency of $3,213.66, which was balanced on the books by dividing it between each of the partners — $1,606.83 to each.
William A. Harney was entrusted to settle up the affairs and. realize upon the assets, and pay the debts so far as they were sufficient for that purpose. Subsequently the executors of Harney advanced moneys enough to pay the $1,500 due the First National Bank and something on account of the other debts.
At the date of William Harney's death, the books show that he owed to the firm a trifle more than his son William did, but the subsequent advances made by the executors to pay the debts of the firm render the balance as between the estate and William A. Harney largely in favor of the estate.
The advances of the executors of cash to pay debts are, in some instances, entered in the books as loans, but such entries do not alter the intrinsic character of the transaction, which was a payment by the personal representatives of a deceased partner of partnership debts for which his estate was clearly liable. *Page 701 
Besides, not all the debts were paid, and enough remain to show a clear equity in the complainants to have the partnership property applied to their payment.
II. William A. Harney failed early in 1893, and on the 17th of March, 1893, the defendant Bowen, as assignee of Clark Demarest, recovered a judgment against him for $399.29, and on the 7th of June, 1893, the First National Bank of Jersey City recovered a judgment for $4,061.55, and subsequently, on the 14th of August, 1893, the bank recovered a further judgment against him for the sum of $1,638.46. Upon this last judgment execution was issued and returned unsatisfied. William A. Harney was then examined under supplementary proceedings, aud upon such examination his interest in this property was discovered, and analias execution was issued and duly levied upon the lot in question, and it was advertised for sale.
The defendants contend that, by virtue of their several judgments and levies, they acquired a lien upon the one-third interest of W. A. Harney, which is superior in right to the equity of the executors of the deceased partner. They do not deny that the executors have an equity, but they say it is a secret one and must yield to the statutory lien of a judgment.
The general rule is that an equity of this sort is superior to that of a judgment creditor or any other party acquiring an interest from the holder of the legal title, except it be a bona fide purchaser for value. The principle is that the lien of a judgment reaches only such right as the defendant in execution has in the property, subject to all equities against it. The holder of the legal title of real estate which constitutes part of the assets of a partnership, holds it in trust for the firm, "so far, at least, as may be necessary to pay the partnership debts and adjust the equities between the partners." Pillsbury v.Kingon, 4 Stew. Eq. 619 (at p. 625), and cases cited; Lind. Part. p. 351et seq.; and see remarks of Mr. Justice Dixon in Arnold v. Hagerman, 18Stew. Eq. 186 (at p. 197). This trust in favor of the firm results from the mere fact that the land was bought and paid for with partnership funds for partnership purposes, *Page 702 
and is a part of the partnership property. The doctrine is quite familiar and perfectly well settled.
The effect of this trust upon the rights of the parties is thus dealt with by Professor Pomeroy (2 Eq. Jur. § 685):
 "The equitable interest created by a trust or by a contract in rem, made upon a valuable consideration, is superior to the equity arising from a mere voluntary transfer, a mere gift, or from a mere judgment lien. In contemplation of equity, the interest created by a trust, or by a valid executory contract of sale, or by a valid contract giving rise to a lien, or by an act in connection with such a contract constituting a lien — as, for example, a deposit of title deeds — is a real, beneficial interest in the specific thing itself — an interest which is property or analogous to property; and, although such interest is not recognized by the law, it is treated by courts of equity as actually subsisting, and as binding upon the conscience of the original party who held the thing and who created the interest. On the other hand, while the interest acquired by a transfer without consideration, by a voluntary gift, may be protected if it does not interfere with third persons, yet the voluntary transferee or donee can only receive whatever interest the donor was actually entitled in conscience and good faith to bestow; he never obtains, even as against the donor, and much less as against third persons dealing with the donor in respect to the same thing, any paramount right of his own. The consideration on the one side and the absence of it on the other lie at the very bottom of the equitable theory concerning actual rights. The lien of a judgment is analogous to the claim of a donee; it is general, not specific. The beneficiary under a trust, the vendee under an agreement, the holder of a lien created by a contract in rem, deals concerning a specific thing; he parts with the consideration upon the security of that specific thing; he obtains an equitable interest in that specific thing. The judgment creditor has not dealt with that specific thing; he has not parted with value in contemplation of it; his lien is general and not confined to it. It is just, therefore, that, so far as their intrinsic natures are concerned, his claim should be considered as inferior to the interest arising from a trust or from a contract in rem. His lien only extends to what his debtor really has — that is, to the thing subject to all the equities in it existing at the date of the judgment."
And again (§ 721):
 "Judgment creditors are not' purchasers' within the meaning of the recording acts, and unless expressly put upon the same footing, they do not obtain the benefit which a subsequent purchaser does by a prior record. The equitable doctrine is that a judgment and the legal lien of its docket bind only the actual interest of the judgment debtor, and is subject to all existing equities which are valid as against such debtor." *Page 703 
Chancellor Walworth, in Buchan v. Sumner (decided in 1847), 2 Barb. Ch. 165 (at p. 207), says: "The general lien of a judgment creditor upon the lands of his debtor is subject to all equities which existed against such lands in favor of third persons at the time of the recovery of the judgment. And the court of chancery will so control the legal lien of the judgment creditor as to restrict it to the actual interest of the judgment debtor in the property, so as fully to protect the rights of those who have a prior equitable interest in such property or in the proceeds thereof."
And the supreme court of Ohio, in Page v. Thomas, 43 Ohio St. 38(1885) (at p. 44), speaking of a judgment, says: "The statutory lien of Page does not give rise to any question as to the rights of a bonafide purchaser. By such lien, or by levy, the judgment creditor acquires only the interest of his debtor in the premises. While, therefore, a mortgagee without notice, finding the legal title in the names of the individual partners, lends money and takes a mortgage on the premises, will be protected as a bona fide purchaser, a judgment creditor can make no such claim." And see 2 Freem. Judg. § 357; In the Matter of Howe, 1Paige 125.
The case of Buchan v. Sumner, supra, is an instructive one. There two partners owned real estate which formed part of the partnership assets, but which stood in their names as tenants in common. They dissolved partnership, and the unsettled accounts between them resulted in a judgment by one partner against the other for a large sum of money. Execution was issued upon this judgment and a levy made upon the interest of the defendant in execution in the partnership land, but owing to an error in the docketing of the judgment the lien was not perfected and was declared void, so that a subsequent judgment recovered against the individual partner (the defendant in execution in the earlier judgment) became a lien at law upon his share in the property subject only to a prior mortgage. The contest then arose in equity upon the disposition of the surplus proceeds of the sale of the land upon the foreclosure of this mortgage, and was between the equity of the partner based upon a debt due *Page 704 
him on partnership account from his copartner and a judgment creditor of such partner. Chancellor Walworth, after a thorough examination of the subject and all the adjudged cases in this country up to that date, came to the conclusion that the equity of the partner was superior to that of the judgment creditor.
To the same effect was the decision in Page v. Thomas, supra.
The well-settled and only ground upon which a person dealing with the holder of the title of real estate, subject to a secret trust of which he has no notice, is permitted to obtain from him a title clear of the trust, is that he parts with something of value on the strength of the apparent ownership of the land. This is the very essence of the doctrine of bona fide purchaser. The rule is universal in equity, that in order to constitute a person a bona fide purchaser for value, he must have parted with something either in the way of money or valuable thing, or of a right of action, or have given up some lien which he already had, or assumed some new obligation. He must have altered his position irretrievably in "actual reliance" upon the apparent title of the other party to a particular piece of property. 2 Pom. Eq. Jur. §§ 745, 747;Bassett v. Nosworthy, 2 White T. Lead. Cas. (4th Am. ed.) pp. 82,83.
Now, a mere judgment creditor is not clothed with this armor. He has parted with nothing on the strength of the apparent title of his debtor in any particular parcel of property. Such apparent ownership has not misled him to his injury. He may be disappointed, but mere disappointment does not amount, in legal contemplation, to injury.
In the case in hand it appears affirmatively that neither of the creditors knew that the debtor had the title to this land until after they had obtained judgment. But if they had acquired such knowledge previous to the credit, or to bringing suit on their debts, the situation and rights of the parties would not be changed, for the mere giving general credit on the strength of the apparent ownership of the property does not constitute one a bona fide purchaser. Nor does the incurring the expense of a suit at law create an estoppel.Phillipsburg Bank v. Fulmer, 2 Vr. 52 (at p. 55). *Page 705 
This lack in a mere judgment creditor of the essential elements of abona fide purchaser was pointed out by Chief-Justice Beasley, speaking for the court of errors and appeals, in Herbert v. Mechanics' Buildingand Loan Association, 2 C. E. Gr. 497 (at pp. 499, 500). He says: "As introductory to all reasoning on this subject, it is proper to premise that judgment creditors do not occupy the vantage ground of bonafide purchasers for a valuable consideration, without notice. * * * He who pays the price on a sale, justly and with honest intentions, acquires, in natural morality, the highest possible title to the thing purchased; and it has, at least in modern times, been considered highly promotive of the public welfare, that the circulation of property should be free from secret liens and latent trusts. Hence the doctrine, so much favored in a court of equity, of the inviolable nature of the defence of a bona fide purchaser, without notice, for a valuable consideration. But a creditor who has done nothing more than to convert his debt, subsisting in the form of a contract, into a judgment, has no claim but that of diligence, to the favor of equity. Neither natural justice nor public policy enacts a preference for him over adverse claimants. He has consequently never been treated as a purchaser for value. He can, under his judgment, levy execution on all that belonged to his debtor, but he can take nothing more. He simply represents the debtor, and he takes the property as the debtor held it This is the language of the authorities," citing them.
I should have thought these principles so fundamental and familiar, and their application here so simple, as to require no elucidation or defence but for the fact that the court of our neighboring State of Pennsylvania has adopted a different rule, as shown in a long line of adjudged cases much relied upon in argument by the counsel of the defendants. This line of cases starts with McDermott v. Lawrence, 7Serg. R. 438 (1821), where the contest was between the creditors of a firm of partners and a creditor of one of the partners whose debt was secured by a mortgage upon the share of that partner in real estate held by the partners as tenants in common, the mortgagee having no notice that the mortgaged premises were partnership property. *Page 706 
The mortgage was given preference, though the learned judge seemed to overlook the circumstance that it was given to secure a pre-existing debt.
This case was followed by Hale v. Henrie, 2 Watts 143 (1834). That was an action of ejectment in which the plaintiff claimed title to an undivided share in the property by virtue of a sheriff's deed to himself, founded upon a judgment in his favor, against a person who held the title to the premises as tenant in common with another, and the defence was that the title of the defendant in execution was subject to a trust in favor of the members of a partnership, of which he was one, and who held the title as partners. This defence, which, though equitable, was available at law in that court, was disposed of as follows (at p. 145):
"The title set up by the defendant professes to be paramount to that of Henrie in his separate capacity, and to defeat the plaintiff's execution, by showing that, although the deed to Capp and Henrie was to them as tenants in common, and therefore, on its face, each held an undivided moiety; yet, in fact, they held the property as partners, pledged to partnership creditors, in exclusion of the plaintiff, who was a separate creditor of one partner. Such a trust or ownership of the property is inconsistent with the title on record, which is vested in them as tenants in common. To permit a person, apparently owning property as an individual, to aver a different right in himself as partner, by which his relations to creditors and others are to be affected, would defeat the statute of frauds and perjuries, by which no interest in real estates (except a lease for a short period) can vest or be transferred without deed or writing. It would even be worse than to pass real estate without writing, since a deed would thus express one thing and mean another; and our recording acts, instead of being guides to truth, would be no better than snares. The policy of the recording acts, which began with the settlement of the state, and which long experience has proved to be beneficial, is to render the manner in which an interest or right in real estate is held, in every respect open and notorious. They require all deeds or writings which may affect lands to be placed on record, and, as the statute of *Page 707 
frauds forbids, such interest to be held or transferred without deed or writing, the system is thus complete. No averment of any right by parol, or by, what is still less, the nature of the fund which pays, or the uses or purposes the property is applied to, can be allowed to stamp a character on the title inconsistent with that appearing on the deed and record, to the prejudice of third persons. * * * The money with which Capp and Henrie purchased the property was their own. They could appropriate it as they pleased, and they chose to appropriate it to a purchase for themselves individually and not as partners. Having done so, it cannot be defeated by proving, otherwise than by deed or writing, that they held as partners. If a person should employ his own money in purchasing land and take the deed to himself, it could not be pretended, under our statutes, that another would acquire a title to it by proving that such person had intended the land for him, however strong the evidence of parol declarations or acts in pais might be, short of part performance by delivery of possession. * * * In conformity, therefore, with the suggestion of Chief-Justice Tilghman, in M'Dermott v.Lawrence, supra, after a review of the American and English cases on the subject (and, I think, in accordance with the course of legislation in Pennsylvania on the modes of acquiring title to real estate), where partners intend to bring real estate into the partnership stock, we think that intention must be manifested by deed or writing, placed on record, that purchasers and creditors may not be deceived."
It seems to me quite sufficient to say of this statement, that it is palpably not the law in New Jersey, either as to the effect of our registry laws upon the doctrine of resulting trusts, or as to the allegation that the proof of a trust must be registered as a conveyance, or in so far as it ignores the distinction between the rights of abona fide purchaser for value and a mere judgment creditor.
Our recording statutes do indeed declare that unrecorded deeds of conveyance absolute of land (Rev. p. 155 § 14), and unrecorded deeds of mortgage or conveyances in the nature of mortgages of lands (Rev. p.706 § 22), shall be void as against *Page 708 
subsequent judgment creditors and bona fide purchasers and mortgagees for value.
But these provisions do not, by their terms, include resulting trusts or other purely equitable rights or liens, and they have never, so far as I am informed, been construed by our courts to have such effect.
The subject-matter of the legislation of which they form a part is the providing for the acknowledgment, proof of execution and recording of deeds c.; and it would be a great stretch of the power of construction to hold them to extend to rights which, from their very nature, are incapable of record. See, on this subject, Martin v. Bowen, 6 Dick Ch.Rep. 452.
The reasouing, however, which excludes mere judgment creditors from the position of bona fide mortgagees, except when expressly given that position by the statute, does not apply to purchasers for value without notice (other than the plaintiff) upon executions upon judgments. Such purchasers have all the qualifications of bona fide purchasers for value, and are protected as such. 2 Pom. Eq. Jur. § 724. Just here is the error in the doctrine of the case just cited. It fails to distinguish between the plaintiff in a judgment purchasing at his own sale under it and paying nothing, and a stranger making such purchase and paying his money for the conveyance.
This case (Hale v. Henrie) was followed and its doctrine adopted without question in Ridgway, Budd Co.'s Appeal, 3 Harris 177(1850), and by several more recent cases; so that it is now settled law in Pennsylvania that a judgment creditor, without notice, stands upon the same high basis as a bona fide purchaser, and is not affected by any parol trust.
For the reasons already stated, I am unable to follow these cases.
III. The next question is whether the complainants are in a position to enforce their equity.
It is insisted that, to give them standing in this court, they must either have established their claim by a judgment at law, or the subject-matter of the suit must have been brought within *Page 709 
the jurisdiction of the court by a decree of dissolution and judicial seizure of the assets prior to the judgment.
Neither of these positions is tenable. While it is well settled that a mere creditor at large of the firm has no standing in this court to prevent an improper application of the firm's assets — Young v.Frier, 1 Stock. 465 — it is equally well settled, as I think, upon the plainest principles, that a partner, as such, may maintain such a suit in this court by virtue of his equitable right or lien in the property in question. Deveney v. Mahoney,
8 C. E. Gr. 247 (at pp. 249 (bottom), 250), and cases cited; to which I add 1 Mad. Ch. Pr. 135; 1 Story Eq. Jur. § 678 and cases cited;Beaven v. Lewis, 1 Sim. 376; Kerr Inj. 169; Lind. Part. 359;Greenwood v. Brodhead, 8 Barb. S. C. 593.
It was further contended that this court should not stop the sale under the judgment, since the judgment creditors are, upon complainants' theory, entitled at least to hold their lien subject to the complainants' superior lien, and to have what is left after satisfying their equity.
This is undoubtedly true, and if the conveyance to the partners in this case showed on its face that it was thereby devoted to partnership purposes, there would be force in the contention, at least as against complainants, since the purchasers at sheriff's sale would take with notice, and all purchasers from them would hold subject to the same notice, because it was found in their chain of title. And this is the situation in cases of levy upon personal property, which is usually in the possession of the other partners, and their possession is standing notice to judgment creditors of one of the partners that the property levied upon is partnership property. But in this case the record of the title does not disclose the trust in favor of the partnership. The result is that, although the Plaintiff's in execution would, if they became buyers at the sheriff's sale, acquire no rights as bona fide
purchasers, yet, as before observed, other parties purchasing at the sheriff's sale and paying their money would be under no such disability.2 Pom. Eq. Jur. § 724.
If it be suggested that complainants may protect themselves by giving notice of their equity at the sale, the answer is that *Page 710 
to compel them to resort to and rely upon such a remedy would be to compel them to rely upon matters in pais to preserve their rights. Besides, if either the defendants or a stranger acquire title to the share of William A. Harney, with notice of complainants' rights, what will prevent them from conveying to a bona fide purchaser without notice ? Justice Story (Story Part. § 264) considers this a controlling consideration; and see §§ 260, 263.
No harm is done to the judgment creditors by stopping the sale. Their lien will not be divested, but they will receive the share, if any, remaining to their debtor after the due administration of the assets of the partnership.
I think the complainants are entitled to the relief prayed for, and that the sale should be stayed until the partnership debts are paid and the accounts adjusted, and will advise a decree accordingly.
 *Page 365