Edward L. Angster, Incorporated, a corporation, entered into an agreement with one Haven to purchase a lot at Avon. Spayd made a contract with the corporation to erect a house on the lot, Brighton contracted to do the plumbing work. When the building was completed there were no funds to pay the purchase price of the lot or the contractors. Haven sued to enforce his contract, obtained a decree and the house and lot were sold to make his money. There was a surplus, paid into court. Spayd and Brighton filed mechanics' liens. They recovered judgments against the corporation for their debts but were denied mechanics' liens because the corporation had not the legal title to the lot. A year before the lot was *Page 455 
bought Hull recovered a judgment against Angster, and while the building was in progress filed this bill and a notice of lispendens, charging that Angster bought the lot and took the contract in the name of the corporation to cheat his creditors and that the corporation held the equitable title for Angster, and by interlocutory decree it was so declared and a reference was ordered to ascertain the amount due on the judgment. Before the decree Spayd and Brighton moved to be admitted as parties to the suit, and being denied, they filed their bill to impress the liens of their judgments on the land, paramount to Hull's judgment, and after the interlocutory decree they were admitted as parties, the two suits were consolidated and their bill was ordered to stand as a counter-claim to the Hull bill. Spayd and Brighton claim the surplus money as judgment creditors of the corporation. Hull asserts superiority by reason of his earlier judgment against Angster, his suit to impress it as a lien on the land and his interlocutory decree in the suit.
The rights of these adversaries are purely equitable, to be determined according to equity principles. Each is seeking equitable assets in satisfaction of his judgment as distinguished from enlisting equitable aid in the execution of his judgment at law, for the corporation had only the equitable title to the land, and upon this the Spayd and Brighton judgments did not fasten as liens under the statute; and Angster, Hull's judgment debtor, never held the legal title. The judgments not being liens, priority of entry does not make for superiority of equities; they simply qualify the holders as suitors for equitable relief; nor does Hull's suit and notice of lispendens bring to him any advantage beyond protecting the equities pleaded in his bill against later acquired adverse rights that otherwise might supersede them; the lis pendens is of no importance as to co-existing equities.
Now as to the equities: Spayd and Brighton have none on the ground of having innocently dealt with and given credit to the Angster company as the holder of the equitable title of the lot upon which they erected the building; that gave *Page 456 
them no equitable lien. Nor has Hull a superior equity because of his interlocutory decree declaring the lot to be held by the Angster company in trust for his judgment debtor; the decree isres adjudicata as to the company and Angster, but not as to Spayd and Brighton, and the equities they now, for the first time, set up. It was absolute as to the former; it now becomes relative as to the latter. The Angster company is insolvent. The rights of Spayd and Brighton, as creditors, in the assets of the company are entitled to recognition in equity as are the rights of Hull in the property of his debtor, Angster. Each judgment creditor is entitled only to the interest in the fund to the extent that his debtor contributed towards the acquisition of the property, the sale of which produced the fund. The principle is illuminated in Herbert v. Mechanics Building and LoanAssociation, 17 N.J. Eq. 497; Harney v. First National Bank,52 N.J. Eq. 697.
Angster paid $1,000 towards the purchase price of $8,000; the balance was paid out of the proceeds of the sale of the property. To that extent there is a resulting trust in favor of Angster, which inures to his creditors for, as to the creditors of the Angster company, the taking of title to the lot in the name of the company is to be treated as upon a resulting trust rather than a fraudulent imposition by Angster upon his creditors. The Angster company put up the building; its contribution towards the property was the amount of its indebtedness to Spayd of $10,037.66, and to Brighton of $805. The fund will be distributedpro rata. *Page 457