52 N.J. Super. 27 (1958)
144 A.2d 554
RAYMOND ZWASKA, PLAINTIFF,
v.
GEORGE B. IRWIN, MARIE G. IRWIN, EDWARD P. NORRETT, CATHERINE A. NORRETT, BERNARD NILSEN, MARY M. NILSEN, AND UNITED STATES OF AMERICA, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided August 18, 1958.
*29 Messrs. Cobbin & Farr (Mr. William R. Farr appearing), attorneys for plaintiff.
Messrs. Evoy & Feinberg (Mr. Ralph S. Warrington appearing), attorneys for defendants George B. Irwin and Marie G. Irwin.
Mr. Louis B. LeDuc, attorney for defendants Edward P. Norrett and Catherine A. Norrett.
Mr. James G. Aiken, attorney for defendants Bernard Nilsen and Mary M. Nilsen.
*30 Mr. Chester A. Weidenburner, U.S. Attorney (Mr. John H. Mohrfeld, 3rd, Asst. U.S. Attorney, and Mr. David E. Crabtree, Regional Counsel, appearing), attorney for defendant United States of America.
SCHALICK, J.S.C.
The plaintiff, Zwaska, and defendants, Irwin and Norrett, agreed in 1954 to purchase municipally-owned lots on which they would build and sell dwelling houses, their capital contributions and their profits to be equal. Jointly, they attempted to buy certain lots for which they agreed with the Borough to bid at public sale. They were outbid at the sale. To avoid competitive attention, the three persons then agreed that each would separately apply to the borough for an approximately equal number of newly selected lots, and that they would make successive applications for such lots. They complied with this plan, and at two public sales in September and October 1954 all of the desired lots were separately purchased. Deeds by the borough to Zwaska, Norrett and Irwin, respectively, are in evidence.
Having acquired title in their separate names, they agreed to form a corporation to which the lots would be conveyed, the issued capital stock to be equally divided among the three persons, and in early 1955 an attorney was employed for that purpose, and the corporate title "Zin Builders, Inc." was chosen.
They agreed to build a sample house and they selected as the site the contiguous lots conveyed to the defendant, Irwin. Construction of the house was commenced before the corporate organization was completed, and the initial building costs were divided among the three named persons, who paid bills by separate checks on their bank accounts. After the filing with the Secretary of State of the certificate of incorporation on May 16, 1955, a corporate bank account was opened, funds being supplied by Zwaska and Norrett, and from these deposits materialmen's bills were paid by corporate checks. The moneys so contributed were capital contributions and not loans, and in payment of stock issued. *31 Irwin's equal contribution for his payment for his stock was made in the labor of his employees whom he supplied to work on the building.
The corporation minutes do not disclose the oral agreement of the three persons. Each of the three received 50 shares of stock which were issued.
After the completion of the house in November 1955 arrangements were made with defendant, Nilsen, for the sale of the premises, although transfer of the title had not been made to the corporation. The three parties turned over their deeds to another attorney so that deeds to the corporation could be prepared. At this meeting in October 1955 with the attorney, the three persons instructed him to convey title to the corporation. Whereupon, the attorney took the deeds to a title company with an order for title searches.
On January 23, 1956 the United States Director of Internal Revenue recorded three tax liens covering tax arrearages of defendant, Irwin, in the total amount of $25,109.51. Further liens of similar nature were recorded to June 5, 1956, aggregating $38,650.28. Zwaska and Norrett did not learn of these levies until the latter part of 1956, even though the title company had long since reported the liens to Irwin and his attorney. During negotiations with the Government in an attempt to discharge the subject premises from the liens against Irwin, an agreement of sale had been executed between Zin Builders, Inc., and Nilsens.
On March 27, 1957 the plaintiff, Zwaska, brought this suit, making Norretts, Irwins, Nilsens and the United States of America, defendants. The latter made application for dismissal which was granted, but reentered the cause by intervention, therein asserting the claim to enforce its liens against Irwin and also the real estate and the buildings thereon which title was in Irwin's name. By agreement of all parties, the court ordered Irwins to convey the premises to the Nilsens for the price of $9,500, free and clear of all liens, and that said liens, claims, rights and equities of the *32 parties herein should attach to the proceeds of the sale, distribution to await the final determination by this court of the rights of the several parties.
Stipulations were entered setting forth that the contributions of the three parties for the land and the buildings thereon shall be considered equal. Hence, if Zwaska and Norrett were to succeed in asserting their claims, it was agreed that each of them would be entitled to one-third of the fund which was to be paid into the registry of this court and the Director of Internal Revenue would receive the remaining one-third. On the other hand, if the Government's position is sustained, the Director would receive the entire fund. All materialmen, laborers, and other claimants have been paid.
The plaintiff alleges that defendant, Irwin, held the subject premises in trust for plaintiff to the extent of a one-third interest, which is similarly imposed on the agreement of sale and the resulting fund, and thereby seeks one-third of the fund as his property.
The defendant, Norrett, seeks a similar relief as the plaintiff, and Norrett by way of answer admits the allegations of the plaintiff, substantiating the facts hereinbefore related, and Irwin by answer admits the truth of the facts alleged.
The Director of Internal Revenue in the complaint in intervention claims priority for the amount of liens over the claims of Norrett and Zwaska to the full extent of the fund.
The Government is proceeding under certain sections of the Internal Revenue Code of 1954, 26 U.S.C.A.:
Section 6321  Lien for taxes.
"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."
*33 Section 6322  Period of lien.
"Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed is satisfied or becomes unenforceable by reason of lapse of time."
The rights of the Government are solely dependent on the rights of the taxpayer. A federal lien can rise no higher than the rights of the taxpayer, which rule limits the Government to the recovery of only the taxpayers' interest in the property. This is equally true if property is the subject of joint ownership. Bankers Title & Abstract Co. v. Ferber Co., 15 N.J. 433 (1954), and the authorities cited therein.
The statute of frauds is not an issue as neither of the parties pleaded it. Moreover, the statute is not available to the Government, in view of its status as a judgment creditor. While the federal tax assessments against Irwin have the force and effect of a judgment, the statute of frauds was enacted for the protection of the party sought to be charged, and is not available to strangers to the agreement. McCue v. Deppert, 21 N.J. Super. 591 (App. Div. 1952). The Government as a judgment creditor is a stranger within the meaning of this rule and cannot set up the statute of frauds to prevent the execution, by its debtor, of an oral executory contract if the latter is willing to perform. 37 C.J.S. Frauds, Statute of § 220. If the parties to the contract as in this case are willing to waive the requirements of the statute, a stranger to the contract cannot object. It logically follows if one receives a conveyance of land under an oral agreement to hold in trust or reconvey, although it could not have been enforced against him, if he seeks to reconvey in pursuance of the trust, a lien creditor cannot object on the ground of the invalidity under the statute of frauds. 49 Am. Jur., Statute of Frauds, § 594. Under N.J.S.A. 25:1-3.
"All declarations and creations of trust or confidence of or in real estate shall be manifested and proved by some writing, signed *34 by the party who is or shall be by law enabled to declare such trust, or by his last will in writing, or else they shall be utterly void and of no effect.
This section shall not apply to any conveyance of real estate, by which a trust or confidence shall or may arise or result by implication or construction of law, or be transferred or extinguished by act or operation of law, and any such trust or confidence shall be of like force and effect as the same would have been if this chapter had not been enacted."
This statute does not prevent the creation of a trust by parol, although the trust must be proved by writing. The latter requirement merely prescribes a rule of evidence. Nevertheless, in the instant case, the defendant Irwin failed to offer himself as a witness and his answer filed in the cause by reason of its indecisive content, is not sufficient written manifestation to support the proof required to establish an express trust. We are confronted with the efforts of plaintiff, Zwaska, and defendant, Norrett, attempting to prove that Irwin held the lands in trust.
Equity may, where an express trust fails for want of the required written manifestation, grant relief through the formula of a constructive trust to prevent unjust enrichment.
In view of the proofs showing the early arrangements were that each party should buy certain lots in his name as a joint adventure; the subsequent construction of the house under the supervision of and with an equal amount of funds from Zwaska and Norrett and services of proportionate value from Irwin and his employees with proper credit to Irwin of the amount he paid for the land; as well as the joint efforts of all to give effect to their oral arrangement after the house was completed in order that buyer Nilsen could acquire title; this court resolves the finding that a retention of the property by Irwin would be unconscionable. It is nonetheless true, when the Government becomes a judgment creditor.
Unquestionably, the three persons dealt with the transaction throughout as a trust with Irwin holding title to the land and the buildings thereon until such time as the attorneys would complete the prerequisites for a transfer, so *35 that all would hold in equal shares. Under these conditions and circumstances, the court determines that Irwin held title to the lands and buildings thereon as a constructive trustee for the three persons who were in this joint adventure. Stretch v. Watson, 5 N.J. 268 (1950); Eastmond v. Eastmond, 2 N.J. Super. 529 (Ch. Div. 1949); Ditscher v. Booth, 13 N.J. Super. 568 (Ch. Div. 1951).
The previously cited rule that a federal lien can rise no higher than the rights of the taxpayer, firmly restricts the extent of the Government lien in view of the conclusion that equity is called upon to declare this a constructive trust. The reasoning must be founded upon the accepted principle of law that a constructive trust once determined is for all legal purposes a constructive trust from the time of its origin in dealing with the res which is the subject of the trust. It would be illogical and irreconcilable to find exclusive ownership in the individual at the inception of the transaction and at some later juncture evaluate it as a trust. This is always true, but the parties by their undisclosed operations may find themselves barred from the benefits of the trust, as to innocent parties, such as bona fide purchasers, who have dealt with the res without knowledge of the secret trust. The Government's status in this case does not place it in such a preferred position, for it is now necessary to turn back our reasoning to our first milepost which marks the right of the Government as solely dependent on the rights of the taxpayer, heretofore defined.
The right of this court to make such a determination is concisely stated in United States v. Cox, 119 F. Supp. 147, 150 (D.C.N.D. Ga. 1953):
"The effect of the government's lien for taxes in relation to a provision of federal law is always a federal question, and the meaning of the provisions of the federal law are not to be determined by resort to local law. However, the ascertainment as to the ownership of property and the extent of interests therein will be determined by applying the law of the State where the property is located, and this is true in determining what constitutes property of the taxpayer on the date of the asserted lien * * *."
See United States v. Winnett, 165 F.2d 149 (9 Cir. 1947).
*36 The irrefutable reasoning of the court in United States v. Vorreiter, 134 Colo. 543, 307 P.2d 475, 478 (Sup. Ct. 1957), has a proper place at this point:
"First, the government does not require a third party to pay the taxes of a taxpayer. And it should make no difference that the payment is in the form of property  the form of property in this case being the enhancement of the value of Price's property by labor performed and materials supplied in the improvement thereof * * *
Second, the government is amenable to the universally recognized doctrine of unjust enrichment. This equitable doctrine is bottomed on the principle of fairness and justice. It has had application in tax cases involving questions of priority. * * *
Third, the lien attaches to so much, and no more, of the property interest which the taxpayer had at the time the tax lien came into being."
The Government cites our recording statutes, contending that even if the evidence justifies the finding of a trust, still the lien must prevail because title to the premises is solely in the name of Irwin in the record office, and any interests that Zwaska and Norrett might have are not disclosed on the records.
The statutes referred to are:
N.J.S.A. 46:16-1. "All deeds or instruments of the nature or description hereinafter in this section enumerated, of or affecting the title to real estate in this state, may be acknowledged or proved and then recorded in the office of the county recording officer of the county wherein the real estate is situate:
A. Conveyances, releases, declaration of trust; * * *."
N.J.S.A. 46:22-1. "Every deed or instrument of the nature or description set forth in section 46:16-1 of this title shall, until duly recorded or lodged for record in the office of the county recording officer in which the affected real estate or other property is situate, be void and of no effect against subsequent judgment creditors without notice, and against all subsequent bona fide purchasers and mortgagees for valuable consideration, not having notice thereof, whose deed shall have been first duly recorded or whose mortgage shall have been first duly recorded or registered; but any such deed or instrument shall be valid and operative, although not recorded, except as against such subsequent judgment creditors, purchasers and mortgagees."
If the parties have deeds or instruments, in the nature of conveyances or declarations of trust, the statutory requirements *37 demand that they be recorded, otherwise they are void and of no effect against subsequent creditors. No such deeds or instruments were available in this case, to Zwaska and Norrett.
Vice Chancellor Pitney fully surveys the law applicable to this situation in Harney v. First Nat. Bank of Jersey City, 52 N.J. Eq. 697 (Ch. 1894):
"The well-settled and only ground upon which a person dealing with the holder of the title of real estate subject to a secret trust, of which he has no notice, is permitted to obtain from him a title clear of the trust is that he parts with something of value on the strength of the apparent ownership of the land. This is the very essence of the doctrine of bona fide purchaser. The rule is universal in equity that, in order to constitute a person a bona fide purchaser for value, he must have parted with something either in the way of money or valuable thing, or of a right of action, or have given up some item which he already had, or assumed some new obligation. He must have altered his position irretrievably in `actual reliance' upon the apparent title of the other party to a particular piece of property. 2 Pom. Eq. Jur. §§ 745-747; Bassett v. Nosworthy, 2 White & T. Lead. Cas. Eq. (4th Am. Ed.) 82, 83. Now, a mere judgment creditor is not clothed with this armor. He has parted with nothing on the strength of the apparent title of his debtor in any particular parcel of property. Such apparent ownership has not misled him to his injury. He may be disappointed, but mere disappointment does not amount, in legal contemplation, to injury. In the case in hand it appears affirmatively that neither of the creditors knew that the debtor had the title to this land until after they had obtained judgment. But if they had acquired such knowledge previous to the credit, or to bringing suit on their debts, the situation and rights of the parties would not be changed, for the mere giving general credit on the strength of the apparent ownership of the property does not constitute one a bona fide purchaser. Nor does the incurring the expense of a suit at law create an estoppel. Phillipsburgh Bank v. Fulmer, 31 N.J.L. 52, at page 55. This lack in a mere judgment creditor of the essential elements of a bona fide purchaser was pointed out by Chief Justice Beasley, speaking for the court of errors and appeals, in Herbert v. Mechanics Building & Loan Association, 17 N.J. Eq. 497, at pages 499, 500. He says: `As introductory to all reasoning on this subject, it is proper to premise that judgment creditors do not occupy the vantage ground of bona fide purchasers for a valuable consideration without notice. * * * He who pays a price on a sale justly, and with honest intentions, acquires, in natural morality, the highest possible title to the thing purchased; and it has, at least in modern times, been considered highly promotive of the public welfare that the circulation of property should be free from secret liens and latent trusts. Hence *38 the doctrine, so much favored in a court of equity, of the inviolable nature of the defense of a bona fide purchaser, without notice, for a valuable consideration. But a creditor who has done nothing more than to convert his debt, subsisting in the form of a contract, into a judgment, has no claim but that of diligence to the favor of equity. Neither natural justice nor public policy enacts a preference for him over adverse claimants. He has consequently never been treated as a purchaser for value. He can, under his judgment, levy execution on all that belonged to his debtor, but he can take nothing more. He simply represents the debtor, and he takes the property as the debtor held it. This is the language of the authorities,'  citing them."
The court in Cliffside Park Title & Guarantee & Trust Co. v. Progressive Theatres, Inc., 122 N.J. Eq. 109 (Ch. 1937), further resolves this issue against the Government contention:
"A judgment creditor is not, merely as such, a purchaser for value without notice. Herbert v. Mechanics' Building & Loan Ass'n, 17 N.J. Eq. 497, 90 Am. Dec. 601. Even by execution levy his interest simply attaches to his debtor's property as it exists at that time, subject to all equities against the debtor's interest therein. Harney v. First Nat. Bank, 52 N.J. Eq. 697, at pages 707, 708, 29 A. 221. Complainant's equitable right, being one not susceptible of being recorded, was not by operation of the recording statutes barred in favor of, nor subordinated to, the right which Metro acquired by its levy. Harney v. First Nat. Bank, supra."
Counsel for Zwaska and Norrett also questioned the validity of the federal tax assessments, but an exhaustive examination of the controlling statutes and decisions, confirms the legality of the procedure in this case, and the assessments against Irwin are declared valid.
For the reasons herein expressed, judgment will be entered for the plaintiff, Zwaska, for one-third of the fund in court, in favor of defendant, Norrett, for one-third of the fund, and for the United States of America for the remaining one-third, the latter apportionment being the portion of the fund which accrues to the Government by its assessment against Irwin's share.
Judgment will be entered without costs.