78 N.J. Super. 257 (1963)
188 A.2d 310
JULIA LENA AND CARMELLA MENDORLA, EXECUTRICES OF THE ESTATE OF JENNIE YANNELLI, AND JULIA LENA, CARMELLA MENDORLA AND JACK YANNELLI AS INDIVIDUALS, PLAINTIFFS,
v.
PATSY YANNELLI AND EVELYN YANNELLI, HIS WIFE, PACIFIC OIL COMPANY, INC., A CORPORATION OF NEW JERSEY, ABRAHAM FLASTER T/A HY-GRADE FUEL OIL COMPANY AND STAR PETROLEUM, A NEW JERSEY CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided February 7, 1963.
*258 Mr. Louis R. Cerefice, attorney for plaintiffs.
Mr. Sidney H. Reiss, attorney for defendant Abraham Flaster t/a Hy-Grade Fuel Oil Company.
Mr. Frank P. Marano, attorney for defendant Star Petroleum.
HERBERT, J.S.C.
Are certain judgments against Patsy Yannelli liens upon real estate which he would have inherited from his mother had it not been for an assignment he made *259 prior to her death? That is the question presented by this case.
On March 1, 1957 Patsy assigned to the plaintiffs, who are his sisters and his brother, his expectant interest in the estate of his mother. The assignment was in writing and was duly acknowledged. He was paid $2,500 for it.
On August 28, 1959 Jennie Yannelli, the mother, died. She left a will dated February 19, 1952, which was admitted to probate on September 11, 1959. It contained a residuary clause giving to all four of her children equal shares of her entire net estate, with the exception of some jewelry. At her death Mrs. Yannelli owned three pieces of real estate in Essex County and one in Monmouth County.
On December 14, 1959 judgment was entered for $5,223.59 in favor of Star Petroleum  a defendant here  and against Patsy Yannelli. The unpaid balance of the judgment is $3,988.09 plus interest on the entire judgment from the date of its entry.
On December 22, 1959 Patsy's assignment dated March 1, 1957 was for the first time placed on record. This was done by filing it with the Surrogate of Essex County among the papers relating to the estate of Jennie Yannelli and under the docket number assigned to that estate. There was no other filing or recording.
On January 6, 1960 judgment was entered for $216.48 in favor of Abraham Flaster, trading as Hy-Grade Fuel Oil Company  also a defendant here  and against Patsy Yannelli. No part of this has been paid.
There has been other litigation relating to Patsy's assignment of March 1, 1957. Following his mother's death he brought suit to rescind his assignment on equitable grounds. The case was tried before me and I decided it against Patsy and in favor of the assignees. No questions were raised, however, about the judgments mentioned above, Patsy's judgment creditors not having been joined as parties. Granting that the defendants Star Petroleum and Abraham Flaster are not bound by the decision of the earlier case in which they *260 were not parties, I still find the assignment valid. On the date of the assignment no one could say with certainty that Mrs. Yannelli would leave anything to Patsy, or that Patsy might not die before her, or that she would not live for many additional years, or that her estate might not shrink greatly in value before her death. Though the record suggests that one-fourth of Mrs. Yannelli's estate  which would have been Patsy's share  was worth at her death substantially more than the $2,500 paid to Patsy for his assignment, I conclude that the consideration he received was adequate. For a $2,500 certainty he resolved a whole group of contingencies.
Our cases support the validity of the assignment. Fidelity Union Trust Co. v. Reeves, 96 N.J. Eq. 490 (Ch. 1924), affirmed 98 N.J. Eq. 412 (E. & A. 1925); Brands v. DeWitt, 44 N.J. Eq. 545 (E. & A. 1888); Bacon v. Bonham, 27 N.J. Eq. 209 (Ch. 1876), affirmed 33 N.J. Eq. 614 (E. & A. 1881); Havens v. Thompson, 26 N.J. Eq. 383 (Ch. 1875); McFarland v. Stanton Mfgr. Co., 53 N.J. Eq. 649 (E. & A. 1895); Bankers Trust Co. v. Crane, 70 N.J. Super. 447 (Ch. Div. 1961) (dictum).
The weight of authority in other jurisdictions is to the same effect. In re Barnett, 124 F.2d 1005 (2 Cir. 1942); In re Cornell's Will, 170 Misc. 638, 12 N.Y.S.2d 162 (Surr. Ct. 1939); Annotations, 17 A.L.R. 601 et seq. and 44 A.L.R. 1465 et seq., 4 Pomeroy, Equity Jurisprudence (5th ed. 1941), § 1287, p. 821; 3 American Law of Property, § 14.12, p. 594 et seq.; 3 Restatement, Property, § 316, p. 1793.
Counsel for the judgment creditors have brought out that the money paid to Patsy as consideration for his assignment came from a bank account of his mother over which one of his sisters had control, and did not come from the personal funds of the assignees. That is unimportant. The important factor is that Patsy received fair consideration, not where it came from. In Brands v. DeWitt, supra, three sons received payment from their father and in return released their shares of his estate in favor of four other children. After the father's death the releases he had taken in his life-time *261 were held valid, being supported by the consideration which he had paid from his own funds. The court there relied upon Havens v. Thompson, supra, in which a similar result was reached. A number of cases to the same effect in other jurisdictions are collected in one of the authorities listed above: 3 American Law of Property, § 14.12, p. 594, footnote 1.
A more difficult problem in this case is to determine the effect of our recording statutes upon the standing of Patsy's judgment creditors. Where no recording act applies, rights of an assignor's creditors are subordinate to those of an assignee of an expectancy. Havens v. Thompson, supra; Bacon v. Bonham, supra; 3 Amer. Law of Property, § 14.12, supra, at p. 603. Cf. Zwaska v. Irwin, 52 N.J. Super. 27, 36 (Ch. Div. 1958), and Smithurst v. Edmunds, 14 N.J. Eq. 408, 418 (Ch. 1862). However, R.S. 46:22-1 provides in part that "Every deed or instrument of the nature or description set forth in section 46:16-1" shall, unless recorded "in the office of the county recording officer," be void against "subsequent judgment creditors without notice."
The defendants Star Petroleum and Abraham Flaster had no actual notice of Patsy's assignment when their respective judgments were entered. Also, the assignment was not placed on record with a "county recording officer," such official being by statutory definition the register of deeds in those counties having one and the county clerk in all others. R.S. 46:1-1. But, in the words of R.S. 46:22-1, was the assignment a "deed or instrument of the nature or description set forth in" R.S. 46:16-1 as amended L. 1943, c. 275, p. 812, § 1?
The assignment of March 1, 1957 is short. By its terms Patsy assigned and transferred to his brother Jack and his sisters Carmella and Julia "all of my right, title and interest which I now have or may have in the future under any Last Will and Testament of Jennie Yannelli, or any inheritance, share, or legacy to which I may be entitled to receive at any time from the Estate of Jennie Yannelli after her death." On the date this document was executed Patsy *262 could not make a conveyance, for he had then no existing property rights to convey. When Jennie Yannelli died on August 28, 1959, however, something came into existence upon which the assignment of March 1, 1957 could operate. What had previously been a mere assignment of an expectancy was converted at that moment into an effective conveyance. Authorities already cited show that after a prospective heir makes an assignment, title (as between assignor and assignee) passes at the ancestor's death without any additional act on the heir's part or supplementary document from him.
N.J.S.A. 46:16-1 is rather broad in its language. It provides for recording "[a]ll deeds or instruments of the nature or description hereinafter in this section enumerated," and then goes on to list, inter alia, "Conveyances, releases, declaration[s] of trust." It is my view that the assignment of March 1, 1957 was, from the date of Mrs. Yannelli's death, an instrument of the nature of a conveyance. As already noted, it was duly acknowledged. It follows that the failure to record it in the office of the Essex County Register and the office of the Monmouth County Clerk makes it void as to the defendants Star Petroleum and Abraham Flaster t/a Hy-Grade Fuel Oil Company, they being judgment creditors without notice. The undivided one-fourth share of Mrs. Yannelli's real estate which would have been completely transferred to the assignees by Patsy's assignment of March 1, 1957 if judgments had not been entered against him or if the assignment had been placed on record promptly after Mrs. Yannelli's death, is, therefore, subject to the liens of the two judgments. The record in the office of the Essex County Surrogate, already noted, is not a sufficient basis for constructive notice because it does not meet the requirements of the cited sections of Title 46.
No exact precedents have been cited for or against the result just stated, and I have found none; but there is some support for it in cases which have applied the doctrine of estoppel by deed. If X delivers to Y a "deed" warranting that he owns Blackacre when in fact he does not, and later *263 acquires Blackacre, the after-acquired title inures to Y. If Y, however, fails to record his instrument in the chain of title, his rights in the property will be cut off when X, after becoming owner, makes a sale to a purchaser for value without notice. 3 Amer. Law of Property, §§ 15.19-15.22, pp. 842-849; Tully v. Taylor, 84 N.J. Eq. 459 (E. & A. 1915); Wack v. Collingswood Extension Realty Co., 114 N.J. Eq. 253 (E. & A. 1933). In the Wack case a "mortgage" which described land the mortgagor did not own was recorded promptly after its execution. Later the mortgagor acquired the land and sold it to a purchaser who had no actual notice of the earlier "mortgage." It was held that the recording, being out of the chain of title, was ineffective, and that the purchaser took title free of what was in substance an unrecorded mortgage lien. It may be inferred from the opinion, I think, that if the "mortgage" had been put on record as soon as the mortgagor got title, the mortgagee would have been protected. Though papers which are in form regular mortgages or deeds are more obviously recordable than the Yannelli assignment, the difference is merely one of degree.
Each of these papers, in the type of case under discussion, could not be a real conveyance at the time of signing and delivery because the signer then had no property to convey; effectiveness to transfer ownership comes only with the signer's subsequent acquisition of property and the application of equitable principles to the after-acquired title. If Patsy Yannelli, instead of executing an assignment, had made and delivered documents which were deeds in form though not in fact (because of his lack of ownership), would there be any serious question about priority for his creditors on judgments entered against him after his mother's death and before the recording of the deeds? I think a negative answer to this question is to be implied from the Wack case; such deeds would be instruments in the nature of conveyances under R.S. 46:16-1 as amended, and judgment creditors would be entitled to protection against them under R.S. 46:22-1. My conclusion is that the assignment of March 1, *264 1957, having become entitled at Mrs. Yannelli's death to the same effect between the parties as a deed, must be recorded to insure priority over judgment creditors and the others who, in the absence of recording, are protected by R.S. 46:22-1.
Zwaska v. Irwin, supra; Cliffside Park Title &c. Co. v. Progressive Theatres, Inc., 122 N.J. Eq. 109 (Ch. 1937), and Harney v. First National Bank of Jersey City, 52 N.J. Eq. 697 (Ch. 1894), which are cited and relied upon by the plaintiffs, are not in point. Although it was held in those cases that equitable interests in land had priority over judgments, the equitable rights in question were not incorporated in or evidenced by recordable instruments. In the Cliffside case Vice-Chancellor Buchanan said:
"Complainant's equitable right, being one not susceptible of being recorded, was not by operation of the recording statutes barred in favor of, nor subordinated to, the right which Metro acquired by its levy." (at p. 122)
A judgment in accordance with this opinion may be submitted for signature.