DeCamp and others *vs.* Crane and others.

1. An absolute deed, which is given to secure the payment of a sum of money by the grantor to the grantee, will be treated in equity as a mortgage; and it may be considered a mortgage, even if the grantor does not continue personally liable for the debt.

2. A written agreement, given by one person to another, and sent by the person to whom given to the person bound by it, on request, without any intimation that it was obtained for the purpose of being canceled, and which, when obtained, was destroyed without other consent, is not impaired or canceled by being so destroyed.

3. A contract to convey lands upon payment of the price at a future time, on condition that the interest shall be paid every six months in the mean time, is not forfeited in equity because the interest is not punctually paid.

This cause was argued upon final hearing, on bill, answer, replication, and proofs.

*Mr. Linn* and *Mr. C. Parker*, for complainants.

*Mr. Cummings* and *Mr. J. F. Randolph*, for defendants.

THE CHANCELLOR.

This suit was brought by Edward DeCamp, and Augusta his wife, against the defendants, Eliza A. Crane and her husband, and Lewis C. Grover, her trustee, to compel the conveyance of two tracts of land, part of the Hibernia mine, in the county of Morris, to the complainant, Augusta De-Camp. The bill was filed April 30th, 1860. The complainant, Augusta DeCamp, having died on the 6th day of September, 1863, during the progress of the suit, her seven infant children were made complainants in her stead, with her husband, Edward DeCamp, who survived her. There was a decree *pro confesso* against Grover, who was the trustee of Mrs. Crane under a marriage settlement, she having married after the date of the deed and lease set out in the pleadings, which were made in her maiden name, Eliza A. Scott, and the commencement of this suit. She and her husband answered jointly, her husband disclaiming any interest in the subject matter of the suit.

DeCamp and his wife, and Mrs. Crane, were all examined as witnesses without objection; and no objection was made at the hearing, to reading the answer of Mrs. Crane as evidence against her, although made jointly with her husband.

There is but little dispute or contradiction about most of the material facts in this case. In March, 1854, Eliza A. Scott and Augusta DeCamp, who were sisters, were each seized in fee of a tract of the Hibernia mine property. The tract of Eliza contained eight acres, and that of Augusta ten acres; they were considered as equal in value, and had been set off to them as equal parts of the estate of their father, in proceedings for partition. The two tracts adjoined. Eliza

wished to sell her tract, and was willing to sell for $6000. Mrs. DeCamp wished to retain her tract. The tracts were of more value when united, as the mine had been opened on the tract of Eliza, and through that opening access could be had to the ore on Mrs. DeCamp's tract. Mrs. DeCamp was unable to purchase for want of means, her husband having become embarrassed by debts, and her tract being encumbered by mortgages and judgments. Under these circumstances, it was proposed by Mr. DeCamp, and agreed to by Eliza Scott, that Mrs. DeCamp should agree to purchase Miss Scott's tract for $6000; that DeCamp should negotiate a lease of both tracts for twenty years to a party who would advance $6000 at the making of the lease, to be re-paid out of the rents, and to be secured by the bond of Miss Scott, and her mortgage on both tracts. Of this $6000, $3000 were to be used by DeCamp to pay off the encumbrances on Mrs. DeCamp's tract, and $3000 were to be paid to Miss Scott on the price of her lot; and the other $3000, with interest, was to be paid to her in equal payments, at four, eight, and twelve months, with interest. Miss Scott was to retain the title, both to her own tract, and to that of Mrs. DeCamp, conveyed to her as security for the residue of the price of her lot, being $3000, and the interest thereon, and when the same was paid she was to convey both lots, subject to the lease and mortgages, to Mrs. DeCamp.

DeCamp, finding that $7000, instead of $3000, was needed to clear his wife's lot of the encumbrances, succeeded in negotiating a lease with Charles Jackson, jun., for the term of twenty years; Jackson to advance $10,000, to be secured by the bond and mortgage of Miss Scott on the premises, payable within six years, with interest. The rent reserved on the lease was to be applied quarterly to the payment of the debt. The rent was 37½ cents for each ton of ore taken out, and the lessee was bound to take out twenty-five thousand tons of ore every five years, from the 1st day of April, 1855. The amount was to be endorsed quarterly on the bond and mortgage, and was to be a satisfaction of so much until the whole

should be paid, the lessor thus becoming bound to pay off his own mortgage by the rents.

To this negotiation and arrangement made by DeCamp, Miss Scott assented, and executed the lease and bond and mortgage to Jackson on the 8th day of March, 1854, Mrs. DeCamp having conveyed to her the ten acre lot on the 3d day of that month. The deed to Miss Scott recited a consideration of $7000, though none had been agreed upon or was paid, the real consideration and object being to carry out the arrangement made.

Of the sum advanced by Jackson, $7000 was used by De-Camp to pay off encumbrances on the lot of his wife; the other $3000 was reserved to pay to Miss Scott on the price of her lot, according to agreement; but, at his request, she permitted him to use $2100 of it in his own business, upon his promise to re-pay it in four months, with interest, and she received only $900 of the $6000 for which she had sold her lot. Mrs. DeCamp knew of this retaining the $2100, and did not object to it.

DeCamp did not pay to Miss Scott the $2100 at the end of four months, and at the end of that time a new agreement was entered into between Miss Scott and Mr. and Mrs. De-Camp, by which the residue of the consideration money due to her, being $5100, was to be paid by her retaining it out of the rents of the tracts after the mortgage had been paid off. DeCamp, in the mean time, was to pay the interest on this sum of $5100 every six months; this payment was made a condition of that agreement. And when the mortgage to Jackson and this debt of $5100 should be paid, Miss Scott was to convey both tracts, and assign the lease to Mrs. De-Camp. This agreement was reduced to writing, signed by Miss Scott, and delivered to Mrs. DeCamp; she kept it several years. Mr. DeCamp, not having paid the interest as agreed, Miss Scott requested that he would send her that agreement, but without any intimation that she claimed it as her right, because it had not been complied with, or that she intended to destroy or cancel it. He communicated the

request to his wife, who sent the paper to Miss Scott, but without any intention or idea on the part of either DeCamp or his wife that it was to be surrendered or destroyed. Miss Scott kept it for two or three years, and then, some time in 1858, destroyed it without any other or further authority from Mr. or Mrs. DeCamp. In 1858, Miss Scott, who had married, and was then Mrs. Crane, being in want of money, a sale of this whole property was negotiated, with the consent of Mr. and Mrs. DeCamp, to E. L. Dayton, who was to pay Mrs. Crane $8000, which she agreed to take in full of her claim, and Dayton agreed to convey to Mrs. DeCamp, as the consideration of her consent, the ten acre lot. Dayton, having paid Mrs. Crane $1400 on account, and not being able to carry out his contract, forfeited that sum and abandoned it.

Mrs. Crane, by the lease, was bound to pay the taxes, and paid out large sums on that account, and receiving no interest from DeCamp, became dissatisfied, and claimed that Mrs. DeCamp had forfeited all right to the property, and that she was the absolute owner, and offered the same for sale.

The bond and mortgage to Jackson had been paid off from the rents of the property before the 16th day of February, 1860, and on that day were canceled and surrendered, but the mortgage was not canceled of record until April 24th, 1861.

The bill asks for an account of the rents received by Mrs. Crane, and claims that the mortgage to Jackson has been paid off by them, and that the debt from complainant to Mrs. Crane has, in whole or in part, been paid off in like manner, and offers to pay any deficiency, and prays that the defendants, upon her being paid such deficiency, if any exists, may be compelled to convey the whole tract of eighteen acres to Mrs. DeCamp, subject to the lease, the rents and benefit of which shall enure to her.

The answer of the defendants, although shaped into some form, is not technically or artistically drawn, but it is a sensible, straight-forward narration of the facts conceived to be

important in the case, with the views and inferences of the draughtsman, as to the bearing on the case. It mainly admits the facts above stated, giving a coloring to some, and stating as facts inferences drawn from others, not admissible either at law or in equity; and it places the defence mainly or entirely on the ground, that any agreement she may have made with Mr. or Mrs. DeCamp has been forfeited by not being performed on their part, that she is not bound thereby, and the same cannot be enforced.

The complainants claim that the whole property is held by Mrs. Crane, as mortgagee, and that it is subject to redemption by payment of the amount due, if any; that the ten acre tract was conveyed expressly as security for the price of Mrs. Crane's lot unpaid, and for no other purpose as between Mrs. DeCamp and her, though, as to Jackson, it was to enable her to execute the mortgage and lease on the whole. They also contend, that the eight acre tract having been sold to Mrs. DeCamp for $6000, of which part had been paid in cash, and the residue secured by conveying the other tract by way of mortgage, the same, in equity, was held by Mrs. Crane for the benefit of Mrs. DeCamp, and as an equitable mortgage with the other tract for the payment of the balance of the price for which it was sold.

There can be no doubt but that the lot of Mrs. DeCamp was conveyed to Mrs. Crane, so far as her own rights are concerned, by way of security or mortgage only; there is no pretence of any agreement for sale, or that Mrs. Crane wanted to buy it; the proof is clear, that Mrs. DeCamp was not willing to sell. The doctrine is well settled, that if a deed absolute on its face was given only by way of security, or as a mortgage, it shall be a mortgage, and continues such until the equity of redemption is released or foreclosed. I admit the force of the position so ably urged by the counsel for the defendants, that when the question is whether the transaction constitutes a mortgage, or is a sale with an agreement to re-convey, the fact whether there is a continued debt or liability of the mortgagor is very important. It is

difficult to conceive of a mortgage, which, in its very essence, is a pledge as security for a debt, without some one being liable for the debt. But I am not willing to say that there can be no mortgage without a debt, or some one being bound, at all events, to pay the money. A mortgage may be expressly made in that manner.

But in this case that question does not arise. There was a debt of $5100 for part of the price of the lot, which De-Camp expressly promised to pay, at first, in four, eight, and twelve months; afterwards, to pay the interest on it half yearly, and to permit the principal to be retained out of the rents, after payment of Jackson's mortgage; and, on failing to pay the interest, he was to forfeit the agreement for extension of payment, or was to be liable for the whole at once. There is clearly a continuing debt. As to the lot of Mrs. DeCamp, the conveyance was a mortgage only, and the complainants are entitled to redeem.

I cannot assent to the position, that Mrs. Crane held the title to her own lot, as mortgagee. The title to that never vested in Mrs. DeCamp, either at law or in equity; the price had never been paid, and she was never entitled to call for a conveyance. It would be dangerous to turn every contract to convey, into an equitable title, and hold that the vendor is only a mortgagee, and subject to redemption until foreclosed.

But there was a clear, definite contract to convey this lot to Mrs. DeCamp for $6000. This contract was at first by parol only; but even if the statute of frauds had been set up and pleaded, it could not avail, because there was clearly part performance, which would take the case out of the statute. The conveyance of the lot of Mrs. DeCamp was part of that agreement, and it had been made, $900 of the consideration had been paid, and the whole property leased and mortgaged to Jackson. These acts of part performance would have taken the case out of the statute without any written agreement.

But there was a written agreement a short time after the

lease. Mrs. Crane says, four months after, an agreement was drawn by Mr. Hays, signed by Mrs. Crane, and delivered to Mrs. DeCamp, containing the essential features of the first agreement, with an additional provision, postponing the payment of the $5100 until after Jackson's mortgage should be paid, and agreeing, after the mortgage and that debt of $5100 were paid off, to convey both tracts to Mrs. DeCamp.

The giving up that agreement deliberately and designedly, for the purpose of having it canceled and destroyed, might bar a suit for specific performance. But the sending it to Mrs. Crane at her request, as was done in this case, without a word being said, or anything agreed to, as to canceling, surrendering, or destroying it, can have no effect. According to her own version of the transaction, she had no right to destroy it. She claims the right, on the ground that it had become invalid by reason of DeCamp not having performed his part, and says that she destroyed it as a useless paper. The case must be considered and determined as if that paper were still in existence. As Mrs. Crane wrongfully destroyed it, when there is any discrepancy in the testimony, or want of sufficient evidence as to its contents, the leaning must be against her. She sets out the substance of the agreement in her answer, and states that the agreement was on condition that DeCamp should pay the interest semi-annually and promptly. But she does not, in stating the agreement, say that it provided for its own forfeiture, if the interest were not paid; but she states that, as her own conclusion, after stating the signing and delivery of the agreement. Mrs. DeCamp expressly denies that the agreement contained any provision for forfeiture for non-payment of interest; and Mrs. Crane does not so state in her testimony.

This agreement, then, for the purpose of this suit, must be taken to be an agreement to extend the time of payment of the $5100, and when that was paid, that the property should be conveyed to Mrs. DeCamp, and that it contained no express clause of forfeiture.

D *

Such an agreement would not be rendered invalid, nor would specific performance be refused, because the interest was not paid at the time stipulated. Part of the principal had been paid, and the residue, with the interest, was secured, and it is doubtful if the time for conveyance had arrived at the filing of the bill. The mortgage of Jackson had been then paid, but, so far as appears, not $1000 in excess of it; and the time for conveyance would not arrive until the taxes and the $5100 and interest had been received. There appears to be no laches or delay in bringing suit. On the contrary, the complainants were not entitled to a conveyance at the filing of the bill. But they were entitled to an account of the rents received to ascertain if the debt was not wholly paid, and to have an injunction to restrain the sale and conveyance of the property, and to have it determined that Mrs. DeCamp was entitled to a conveyance; and if, by the rents that have accrued or been received since the filing of the bill, the whole amount due to Mrs. Crane has been paid and discharged, and shall so appear upon the taking of the account, they are entitled to have a re-conveyance decreed in this suit.

In her own lot, Mrs. DeCamp was, at her death, entitled to the equity of redemption, and her surviving husband is, therefore, entitled to curtesy. It must be re-conveyed to him and the children of his deceased wife, to hold to him during his life, and to the children, in fee, after his death. In the other lot, she was not, in her life, seized of or entitled to any estate, either at law or in equity, and her husband cannot be entitled to curtesy; it must, therefore, be conveyed to the children in fee. The children are entitled to the proceeds of this lot, from the death of their mother, as against DeCamp, free from any contribution to pay any of the claims of Mrs. Crane, except one half of the taxes paid by her, and one half of the $3000 constituting the second payment to be made on Mrs. Crane's lot, or of so much of these two amounts, and the interest thereon, as remained unpaid, after appropriating for the purpose the rents which

had accrued to Mrs. DeCamp's death. The $2100 which he appropriated of the money which should have been paid to Mrs. Crane for her lot, and the interest thereon, or rather so much as remained unpaid at the death of his wife, must be taken out of the part of the rents due to Mr. DeCamp since the death of his wife, as belonging to the lot in which he has curtesy.

It must be referred to a master to take an account of the principal and interest due to Mrs. Crane for the price of her lot agreed to be sold to Mrs. DeCamp, and for taxes paid by her, and interest on these amounts; and also the amount due to her for debts paid by her for Mr. DeCamp, on account of liabilities which she had incurred for him at the making of the lease to Charles Jackson, jun.; and also to take an account of the rents due to, or received by her from Charles Jackson, jun., over and above the amount due on the mortgage to him, and the interest on the same.

If such receipts exceed the amount due to Mrs. Crane, the complainants will be entitled to a conveyance, and to the payment of such excess. If they are not sufficient to pay the amount due to her, with interest, the complainants will be entitled to have the property conveyed to them, upon paying such deficiency, with her costs in this suit. And all further directions must be reserved until the master's report.

I do not think, under all the circumstances, that Mrs. Crane is bound to account for the $1400 received from Dayton; it was upon a bargain she was allowed to make for the sale of what she considered her own property. Mrs. DeCamp was to receive her share of the proceeds in another manner, if the sale went on. The only amount realized was this sum on Mrs. Crane's share, and she is entitled to it.

It appears by the evidence, that Mrs. Crane received $1000 from DeCamp, and $4000 from some other person— profit from the sale of ore, which she was entitled to receive from Jackson, at $2.50 per ton, by the provisions of the lease to him, set out in the bill. This ore was worth a

higher price, and these sums are her profits on the sale. Upon the view taken, that she holds these lands only as security for her debt, she must account for these sums as part of the rents and profits of the premises received by her.