The law is clearly settled to the effect that one who sets up a resulting trust in himself, the conveyance being to another, must show that the land was bought with his money, and not merely that the purchase was made for his benefit. Nor will a subsequent payment of the money by relation attach a resulting trust to the original purchase, since a resulting trust arises from the fact that the money of the real and not the nominal owner formed the consideration of the purchase at the time and became converted into land.
But it is not necessary that the money forming the consideration of the purchase pass through the hands of the real purchaser. If the purchase-money was, in fact, advanced by the nominal owner as a loan of money to the real owner, trust results.
It is entirely clear from the evidence that the money paid to the Fairview Realty Company at the time the contract of sale was executed was the money of complainant. The testimony of the agent of the shipping board clearly discloses that Mrs. Falvey loaned to complainant the money which was paid at the time the contract of sale was executed, but wanted the contract changed from complainant's name to her name to better secure her for the loan. That transaction made the money, which was then paid, the money of complainant, to the same extent as though the money had been first paid to complainant by Mrs. Falvey and by complainant paid to the Fairview Realty Company. Accordingly, Mrs. Falvey acquired the contract from the Fairview Realty Company to her for the sale of the premises here the subject of controversy in trust for complainant's use and benefit. The right to pay the balance of the purchase price and acquire the legal title thus became the right of complainant; as against complainant Mrs. Falvey could not *Page 463 
thereafter, without complainant's consent, advance the balance of the purchase price and acquire more than an equitable lien for her expenditures.
Nor do I think any substantial doubt can exist as to the subsequent occurrences. It is my belief that at the time of settlement no change had occurred in the relations or purposes of either of the parties, and that Mrs. Falvey at that time advanced for complainant, and not for herself, the balance of the cash purchase price and executed the purchase-money mortgage in precisely the same manner and for precisely the same purpose that she had advanced the original payment — that is, as a loan to complainant, thinking herself adequately secured by the deed of conveyance then made to her. I am convinced that complainant did not even know what arrangements, if any, had been made by Mrs. Falvey with the realty company; he was confidently and ignorantly relying upon Mrs. Falvey's promise to procure for him a building association mortgage and to accept in installments the cash advanced, or to be advanced, by her for him. If, in fact, Mrs. Falvey lulled complainant into inactivity for the purpose of procuring for herself the legal title to the property in hostility to complainant's rights, a constructive trust would follow the accomplishment of that purpose; but it is my belief that no notion of holding the legal title in hostility to complainant arose in the mind of Mrs. Falvey until more than a year thereafter.
A number of circumstances impel acceptance of the facts stated. At the time of settlement with the realty company, when Mrs. Falvey took over the legal title to the property, complainant had repaid to her the major portion of the money she had advanced for him. Had complainant been apprised of a desire on the part of Mrs. Falvey for the payment by him of the small balance, or had he been apprised that it was necessary for him to make settlement with the realty company to save for himself his home, it is reasonably certain that he would, at least, have made some effort to protect himself. Nor did Mrs. Falvey, in taking over the legal title, return to complainant the payments he had already *Page 464 
made on the original loan to him or credit him with those payments. Nor is it possible to believe that the subsequent payments made by complainant were as rent, as claimed by Mrs. Falvey. For over a year payments were made by complainant to Mrs. Falvey monthly far in excess of a reasonable rental, and during that period complainant paid, in addition to the monthly payments, the taxes and water rents assessed against the property. The aggregate payments so made by complainant far exceeded the total amount of cash required by the realty company, with interest on that amount and interest on the purchase-money mortgage added. It is my belief that during all of that time complainant reposed in the confident and justifiable belief that all payments which Mrs. Falvey had made had been made by her for him as advances to him, and that all payments which had been made by him to her, except those made for taxes and water rents, had been received by her as payments on account, and it is further my belief that, up to the time that the breach occurred, Mrs. Falvey entertained precisely the same belief and intent. I am unable to accept the view that Mrs. Falvey's advances, originally intended as loans to complainant, had in any way undergone a change in their nature, purpose or effect. Mrs. Falvey appears to have been a woman who found great pleasure in aiding others less fortunate than she. She found that pleasure in aiding complainant. When paid the full amount she had advanced to complainant, together with interest, and is relieved from the obligation of any encumbrance she may have placed on the premises, she will be fully compensated, complainant being also credited with all payments made by him to her, with interest.
A decree will be advised in accordance with the views herein expressed. A reference to a master may be made for an accounting in case the parties cannot agree as to amounts.
It should be noted that it is not an easy task to define with technical accuracy all possible equitable rights, interests or estates. The terms "constructive trusts" and "resulting trusts" will be found confused at times even in judicial *Page 465 
utterances and by text-writers. Professor Pomeroy has made the forceful suggestion that this confusion could and should be avoided by eliminating from the former name all trusts that result from acts not accompanied with fraud. The second cause of action in the amended bill filed herein defines the trust claimed by complainant as a "constructive trust." In the present case it also is doubtful whether the averments of the amended bill fully disclose a resulting trust, in that it does not therein clearly appear that the advances of money made by Mrs. Falvey were advances for complainant, as loans to him, and very naturally, complainant was unable to clearly distinguish between an advancement of money by defendant in the nature of a loan and a mere promise of aid. The inherent spirit of such transactions, more than their phrasing, determine their real nature and effect. But since the evidence which has been heard embraces all transactions between the parties and has not been restricted in any way by the averments of the pleadings, I think a decree should be made based upon the facts as I have found them to exist, with leave to complainant to further amend his bill to conform, should he be so advised.