55 N.J. Super. 456 (1959)
151 A.2d 62
MILDRED D. VREELAND, PLAINTIFF,
v.
ANNA COFFIN DAWSON AND THE HANOVER BANK, OF NEW YORK CITY, N.Y., EXECUTORS AND TRUSTEES UNDER THE WILL OF DUDLEY S. DAWSON, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided April 29, 1959.
*458 Mr. Edward LeC. Vogt argued the cause for plaintiff (Messrs. Schenck, Smith & King, attorneys).
Mr. Charles M. James argued the cause for defendants (Messrs. Smith, James & Mathias, attorneys).
MINTZ, J.C.C. (temporarily assigned).
Plaintiff is the daughter of Otto C. and Alvina K. Dietche, both now deceased. In the late 1920's the family suffered financial reverses. In 1931 Ida Schweitzer obtained a deficiency judgment against plaintiff, her husband, her parents, her brother and his wife. The Fidelity Union Trust Company also obtained a deficiency judgment against these parties as a result of a foreclosure on other property in Essex County in or about the year 1932. Ida Schweitzer caused a levy to be made on certain lands in the Borough of Morris Plains *459 described in the complaint, title to which was then in plaintiff's mother, Alvina K. Dietche, her father having passed away. As a result of this levy, the premises were sold by the sheriff to the judgment creditor.
On July 19, 1932 Ida Schweitzer and others conveyed the property in question to one Dudley B. Dawson and Julia G. Dawson, his wife. Said deed was recorded in the Morris County Clerk's office three days later. Julia died on December 25, 1939, and Dudley subsequently married co-defendant, Anna.
Dudley B. Dawson died on May 11, 1957. The defendants, executors and trustees under his will, claim that the deed passed title absolute to the decedent. The plaintiff's contention is that it was merely a security device and that said deed should be adjudged a mortgage, or in the alternative, that defendants hold title to said realty in trust for her. Plaintiff brings this action to compel the defendants to transfer legal title to her upon the payment of the amount still due and owing to defendants by virtue of this security transaction. It was stipulated that in the event plaintiff prevails, the amount due defendants is $18,329.01 plus interest at 5% from August 4, 1958.
The tract of land in question, situate in the Borough of Morris Plains, was purchased by the plaintiff's father in 1924. Primarily through the efforts of her father and her husband, Harrison P. Vreeland, a dam and pond were constructed on the premises. In 1930 the Vreelands started a private swim club and have continued such operation every summer down to the present time, such premises being known as Vreeland's Pond.
After the subject property was sold by the sheriff to Mrs. Schweitzer, the Vreelands then being in possession of said premises were anxious to reacquire the same. Mr. Vreeland testified that he heard that Mrs. Schweitzer needed money. Fred Dietche, his brother-in-law, informed him that the property could be purchased for $8,000. The Vreelands were without funds. He decided to contact his friend, Mr. *460 Dawson, who operated a farm in the area. He told Mr. Dawson that the property could be bought for $8,000 and "if he would put up the money and hold it for me for later on I would pay him back." Dawson stated he would think it over. The following day Vreeland again saw Dawson, whereupon Dawson, according to Vreeland's testimony, stated he would do it and would charge him 5% interest, which was his usual charge on mortgage money. In subsequent testimony, Mr. Vreeland testified that he really meant that his arrangement with Mr. Dawson was that he was to hold the property for Mrs. Vreeland until repayment, since the property originally belonged to Mrs. Vreeland's family. He further stated that in all negotiations with Dawson he was representing his wife and Dawson was aware of this fact. Shortly after this meeting Mr. Vreeland testified that he brought Mr. Dawson to his lawyer, Mr. Horace Jeffers, then associated with the firm of King and Vogt. Discussions took place at the lawyer's office with respect to this property. Subsequently, Mr. Vreeland received from Mr. Dawson a check for $8,000 made by Mrs. Dawson and delivered it to his attorney, Mr. Jeffers, who proceeded to have the title to the premises searched and closed. All expenses incident to the title closing from Schweitzer to Dawson, including the search fee and the fee for recording the deed into the Dawsons, were billed to and paid by Mr. Vreeland. Mr. Dawson did not visit or inspect the property prior to the purchase. Mr. Jeffers testified that while he did not recall the exact arrangements between the Vreelands and Mr. Dawson, and did not know what their agreement was in the event the funds were never repaid to Dawson, yet he definitely stated it was his understanding that Dawson was trying to help Vreeland acquire the property. At the time of the title closing Ida Schweitzer executed an assignment of the judgment to the Dawsons. This assignment was found among the personal effects of Dudley B. Dawson, and appended thereto a memorandum was signed by Dudley B. Dawson, dated October 2, 1940, reading as follows:
*461 "To Whom it may conserne 
"This is to certify that the assignment of judgment Ida Schweitzer to Dudley B. Dawson & Julia G. Dawson is of no value to my estate as it belongs to the people named herein and it was paid for by them."
Plaintiff has been in possession of the premises since the summer of 1930. Dawson always paid the taxes on the premises, from the date legal title passed to him and his wife in 1932 up to and including the first half of the 1957 taxes. It further appears that Dudley B. Dawson, as executor under the will of his first wife, Julia, filed an inheritance tax return with the State Tax Department wherein he listed the subject property under the joint ownership of his late wife and himself, and stated she had a one-half interest in same. He also filed a supplemental affidavit in said proceeding substantially to the same effect.
Over the years the Vreelands made substantial improvements upon the subject premises. They converted the upper floor of the barn into a four-room apartment with a kitchen and coal stove. For years they rented this apartment, collected the rents and profits without any accounting to Dawson, and ultimately moved into same. They replaced the coal stove with a hot air furnace for heat and an electric stove for cooking. Full screens were installed. The hayloft was converted into another room. The boat house was renovated so that it could be used for dressing rooms for the club. A new roof was put on the converted barn. In 1951 the plaintiff and her husband built an additional two-car garage. In 1934 they drove wells so that they could obtain a better water supply during the summer months, at a cost of approximately $2,000. They also improved the septic tank system.
The fire insurance premiums for the buildings were paid for by the Vreelands, although Mr. Dawson was designated the owner on the policies. There was admitted into evidence a page from the account book of Dudley B. Dawson, admittedly in his handwriting. On the top of the page is *462 found the name "Mrs. Harry Vreeland" and the words "5% interest." On the left side of the sheet there is listed as the first item the payment of $8,000, and thereafter all tax payments made on this property by Vreeland from 1932 through the first half of 1957. On the right side of the sheet Dawson listed all payments received from the Vreelands.
Several receipts for payments made by Vreeland to Dawson over the years and signed by Dawson were received in evidence. The one dated March 24, 1937, for $2,000, recites it is "on acct of int." The receipts dated September 24, 1940, for $1,100 and December 2, 1948, for $1,500 each acknowledge payments on "acct of mtg." The November 16, 1949 receipt is in the sum of $1,500 on "acct of Mt. bond & int.," and the one dated December 12, 1950, for $600 on "acct of land." Several other receipts were undesignated. Mrs. Vreeland did not execute any note, bond, mortgage, or any instrument indicative of an obligation to the Dawsons  neither did her husband.
Mr. Vreeland further testified that in 1953 he knew he would be receiving some money from his mother's estate which would enable him to pay Dawson, and so inquired of Dawson as to the amount due. Dawson told him that "we will figure it out some time." Again, in 1955 he broached the subject to Dawson, who indicated it was quite a job and that he would arrange for an accountant to calculate the amount due. Vreeland further said that he spoke with Dawson in December of 1956 but did not bring up the subject of payment since Dawson appeared tired. He knew that Dawson was leaving for Florida, and therefore would not do anything about it until he came back, so he decided to let matters rest until Dawson's return in the spring. He became ill enroute to New Jersey, or immediately upon his return, and was taken to a Newark hospital and subsequently died.
Defendants contend that the plaintiff has failed to sustain the burden of clearly and convincingly proving a trust or security arrangement. Ritter v. Ritter, 125 N.J. Eq. *463 212 (Ch. 1939). They urge that the facts negative such a relationship.
Plaintiff cannot prevail on the theory of an express trust. Such a trust, in the absence of a writing signed by the party to be charged, is void under the statute of frauds. This statute does not apply to a trust which may arise by implication or construction of law. N.J.S.A. 25:1-3.
In order that a purchase of property for another may give rise to a resulting trust, it must always be made clearly to appear that the purchase was made with funds belonging to the party asserting the trust, or that it was made for him and the purchase money presently advanced by the purchaser as a loan to him, for the security of which the legal title is taken to and in the name of the purchaser. 42 A.L.R. 15. While the decisions recognize that the purchase money of the cestui must be initially applied to the acquisition of the property, title to which is taken in the name of the alleged trustee, the principle has been extended so as to hold that the purchase funds may be supplied by the nominal purchaser on credit. Howell v. Howell, 15 N.J. Eq. 75 (Ch. 1862). In Fagen v. Falvey, 96 N.J. Eq. 461 (Ch. 1921), the court stated by way of dictum that "if the purchase money was in fact advanced by the nominal owner as a loan of money to the real owner a trust results." This rule finds further expression in 42 A.L.R. 21, where the author states:
"The decisions appear, upon the whole, to warrant the statement that if it was distinctly agreed before the purchase that the sum paid shall be considered as a loan from the purchaser to the person claiming the benefit of the purchase, then the money employed in making the purchase, though paid directly to the grantor by the grantee, must be considered the money of the promisee; and the case is governed by the rule that where a purchase is made in the name of one with the funds of another, a trust results in favor of such other, or, as it is sometimes put, the transaction amounts to an equitable mortgage."
Plaintiff contends that the testimony clearly supports the finding that Mr. Dawson initially purchased the property *464 from Mrs. Schweitzer under an agreement with Mrs. Vreeland wherein she was to repay him the amount of the purchase price plus 5% interest thereon until repaid, and that such agreement constitutes a loan from Dawson to Mrs. Vreeland; that Dawson thereupon used Mrs. Vreeland's funds to acquire the property, and consequently a resulting trust arose in favor of Mrs. Vreeland or, in the alternative, the transaction amounts to an equitable mortgage.
The decisions make no sharp distinction between a resulting trust and an equitable mortgage. Assuming that there is present a loan of the purchase money proceeds by Mr. Dawson to Mrs. Vreeland, this transaction may be characterized as a combination of resulting trust and mortgage. This is the view taken in 2 Bogert, Trusts and Trustees, page 1367, where the learned author in discussing such a situation states:
"* * * It would seem that essentially it is the creation of a resulting trust, and then the oral mortgage of the cestui's equitable interest under that resulting trust to the resulting trustee to secure performance of the promise to repay the loan. It is a resulting trust and a mortgage combined."
Defendants urge that plaintiff cannot invoke the theory of resulting trust since the testimony does not clearly support the finding of an obligation on the part of Mrs. Vreeland to repay the alleged loan of $8,000. True, Mr. Vreeland testified on cross-examination that he was not obligated to Mr. Dawson because "he didn't take any bond on me"; that he did not know what would happen in the event he was not able to pay off Mr. Dawson. He added, however, that he "would always have paid him for the property," and further, "The only deal I had with him is that at any time I wanted to pay the principal and interest back, why he would gladly sign it over to me." He repeatedly testified that he was to pay Dawson when able to, and that Dawson had good security in the property. He insisted throughout his testimony that he trusted Mr. Dawson, who told him that he had taken care of matters.
*465 Defendants stress that on such testimony the transaction cannot be deemed a loan of the purchase price. At best, it is urged that Dawson's promise was by parole and purely voluntary. Austin v. Young, 90 N.J. Eq. 47 (Ch. 1919). I disagree. It would seem that in assaying the evidence, it supports a finding of at the very least a promise to pay "when able." This is not an absolute, but a conditional and qualified promise. The creditor is required as a prerequisite to recovery to prove the ability of the debtor to pay, and when such ability is established, the promise to pay is rendered enforceable. Lutz v. Ryno, 1 N.J. 363 (1949). Dawson never demanded repayment; hence, this issue did not arise. Plaintiff has established her present ability to repay, and hence her promise is rendered enforceable if such relief were sought by the defendants.
Furthermore, there may be a valid mortgage, in the absence of a personal liability on the part of a transferor or mortgagor to repay. 36 Am. Jur., Mortgages, sec. 59, page 718; 17 A.L.R. 714, 718. In such case the mortgagee must look to his security alone for repayment, but the transaction is just as much a security device as where the mortgagee holds a bond. 1 Glenn, Mortgages, page 25. This principle is recognized in DeCamp v. Crane, 19 N.J. Eq. 166, 172 (Ch. 1868). See also Birkenfeld v. Cocalis, 129 N.J.L. 382 (E. & A. 1942).
The rule is firmly established that a deed absolute on its face intended only as security for a loan will be decreed to be operative as a mortgage. Equity will look beyond the written instrument and explore the character of the transaction and the contemporaneous intentions of the parties. Westcott v. Konstantynowicz, 139 N.J. Eq. 252 (Ch. 1947).
The primary inquiry is, what did the parties intend by their transaction? The absence of an unconditional promise by Mrs. Vreeland to repay is a relevant and material factor to be considered. It is, however, explained away by Mr. Vreeland's testimony and the surrounding circumstances. *466 This was a transaction between neighbors and friendly parties. The Vreelands trusted Mr. Dawson. They had possession prior to the date the Dawsons acquired title. The Vreelands were in financial distress. Mr. Dawson did not come on the property prior to receiving the deed. Mrs. Vreeland's brother advised her husband as to availability of the property for $8,000. Mr. Vreeland's attorney handled the title closing for Mr. Dawson. His legal fees and expenses were paid for by Mr. Vreeland. These contemporaneous circumstances lend convincing corroboration to the testimony of Mr. Vreeland.
The subsequent conduct of the parties may be considered as corroborating the conclusion of resulting trust and equitable mortgage. Killeen v. Killeen, 141 N.J. Eq. 312, 315 (E. & A. 1947); Westcott v. Konstantynowicz, supra. Mrs. Vreeland remained in undisturbed possession of the premises for over 25 years during the lifetime of Mr. Dawson. A page in his account book for this property was captioned "Mrs. Harry Vreeland 5% interest," with entries made thereon suggestive of a mortgagor-mortgagee relationship and not characteristically those between a landlord and tenant. The payments were made at irregular intervals of not less than one year apart. (There was almost a five-year interval between 1932 and 1937, when no payment was made at all.) From 1932 to 1956 the payments were in varied amounts ranging from $600 to $2,700, all of which were in Mr. Dawson's handwriting. Not a single receipt for payment bore the notation that the payment was for rent. Many receipts contained no notation indicating for what they were given, but those describing payments for interest, on account of land, on account of mortgage bond and interest, and on account of mortgage are compelling evidence in support of plaintiff's position.
Then again, plaintiff made extensive improvements to the property. Mr. Dawson sat by. These improvements were not made by the plaintiff as a volunteer nor as a tenant at the sufferance of a landlord. Obviously, they were made in *467 the belief that the plaintiff had a redeemable interest in the property.
The payment of all real estate taxes by Mr. Dawson is not an exclusive incident to ownership. It is common practice for mortgagees to advance tax payments to protect their security and charge such advances to the beneficial owner of the property. Mr. Dawson's account book would tend to indicate that the tax payments were made under such circumstances. Fire insurance premiums on the improvements were paid by Mr. Vreeland although Mr. Dawson was designated the owner. Mr. Vreeland testified such designation was made because Mr. Dawson was the owner of record. There is no evidence that Mr. Dawson ever arranged for the issuance of fire insurance policies, but it is apparent that fire insurance protection was a matter of concern to the Vreelands because of their interest in the subject property.
The listing of the property in Julia's state inheritance tax return stating her interest therein to be one-half is of doubtful significance. In addition to this property, there were several other parcels of realty jointly owned by Julia and Dudley reported in her return in exactly the same manner. Presumably, all such parcels were held by Julia and Dudley as tenants by the entirety. Hence, none of such properties should have been so listed in Julia's state inheritance tax return.
The memorandum signed by Dudley B. Dawson appended to the assignment of judgment from Ida Schweitzer would seem to indicate that a friendly relationship existed between the parties and, if anything, that the Dawsons were endeavoring to be of some assistance to the Vreelands. It is likewise, however, of little significance in shedding light on the initial arrangement between the parties.
Austin v. Young, supra, is distinguishable. The court there held that the fragmentary writings were inadequate to establish an express trust with sufficient certainty, and that the trust alleged to exist was neither a resulting nor a constructive trust. The court there said that the transaction *468 was in no sense a loan of the purchase price, and that the testimony negatived the idea of a loan of money. No amount appeared to have been suggested as the price at which the plaintiff should purchase the property. No proof was presented as to an agreement for the payment of interest. No improvements were made by the plaintiff, and in many other respects the cases are factually different. The case sub judice is similar to Killeen v. Killeen, supra, where the court held that the evidence presented an appropriate case of resulting trust.
The plaintiff, her husband, and Mr. Jeffers were credible witnesses. Their testimony was not controverted. Plaintiff's case depends in great measure upon the testimony of her husband. True, he was at times vague and rambling, but the court, in weighing his testimony, must consider that he was relating an oral agreement entered into some 25 years ago. He did not capitalize on the obvious opportunity to "stretch" the truth. He testified to his best recollection as to what arrangements were made by him in behalf of his wife with Mr. Dawson.
The evidence clearly supports a finding that Mr. Dawson initially advanced the purchase money of $8,000 as a loan to Mrs. Vreeland. Title was taken in the name of Mr. and Mrs. Dawson under an agreement to convey to plaintiff upon payment in full of the funds so advanced together with 5% interest thereon. The contemporaneous circumstances and the subsequent conduct of the respective parties corroborate this conclusion. Plaintiff is ready, willing and able to pay the stipulated amount due. Accordingly, the court determines that plaintiff will be entitled to a deed to the subject premises upon payment to the defendants of the sum of $18,329.01 plus interest at 5% thereon from August 4, 1958, to the date of closing of title.
A form of judgment consistent with the views herein expressed may be presented.