KAHN, J.T.C.
This case involves an inheritance tax assessment pursuant to N.J.S.A. 54:34-1, in the amount of $26,922.00, plus interest, against the Estate of Vera Hammerle (taxpayer or decedent). The assessment by the Director, Division of Taxation (Director) is based on the fact that on November 15, 1995, taxpayer’s date of death, she was a record owner of property located at 35-37 Kolas *345 Court, Middletown, New Jersey (the property), as evidenced by a recorded deed naming her, Patricia C. Pron (her niece) and James B'. Pron (her niece’s husband), as joint tenants. On August 8,1984 the property had been transferred by a third party to Vera Hammerle in fee simple, and subsequently, in 1989, Vera Ham-merle executed a deed to herself and the Prons as joint tenants.
Taxpayer Estate, through its Executor, argues that despite the language contained in the deed, and further, for reasons hereinafter set forth, the Prons, and not Vera Hammerle, should be deemed the actual owners of the property.

Factual Background

Taxpayer contends, through the testimony of its sole witness, James Pron, that in 1984 the decedent along with James and Patricia Pron acknowledged the need for the Prons to purchase a larger home. Mrs. Pron’s mother, Helen Keleher (decedent’s sister) resided with them, and their two daughters were growing older and needed more space. The Prons maintained a very close relationship with their aunt, Vera Hammerle, who at that time, resided in Jersey City, New Jersey. The Prons urged her to come and live with them when they purchased a larger home. Both the decedent and the Prons offered their respective homes for sale. They found another home (the property) to purchase. While the decedent’s home apparently closed title “without a hitch,” the contract purchasers for the Prons’ home backed out, leaving the Prons with insufficient funds to complete the purchase. Mr. Pron testified that Vera Hammerle agreed to make the purchase for the Prons, since she had the ability to pay all cash for the home, permitting the Prons to pay her over a period of time. According to Mr. Pron, the decedent agreed not to go to the trouble of creating new legal instruments, such as a deed to the Prons and a mortgage and note to be executed by the Prons in favor of Vera Hammerle. Vera Hammerle kept the property in her name as security for the Prons’ obligation to pay her under the agreement. Mr. Pron testified that at all times, the Prons and Vera Hammerle treated the property as property belonging to the Prons. Mr. Pron also testified that no written agreement was *346 made between the parties, but that the $129,900 that the decedent paid for the house would be paid in the following manner:
(a) An initial $20,000, representing the portion of the purchase price that would
have been put down had they financed the purchase;
(b) An additional $10,000 payment (cash);
(c) An additional four prepayments of $4,444.46 (cash);
(d) 65 payments of $1,111.11 (cash), and
(e) The deduction of $9,900 from the purchase price, by reason that decedent intended to give the Prons a gift.
Mr. Pron testified that all payments were made, totaling $120,000[1] (the purchase price, minus the gift), and in fact, although they were made in cash, he produced receipts for the payments executed by the decedent. In addition to his regular employment as a firefighter, and after his retirement, Mr. Pron had other jobs from which he earned monies to satisfy the aforementioned payment schedule, and he continued to make repairs and alterations and to otherwise maintain the property. The receipts for the payments to Mrs. Hammerle were of the kind generally used for rent payments; however, the decedent always crossed out the term “Rent” and wrote in “Payment.”
On May 17,1989, at a time when approximately $12,222 was still owed from the Prons to the decedent, the decedent executed a Last Will and Testament, which, in relevant part, bequeathed the property known as 35-37 Kolas Court to Mr. and Mrs. Pron. On the same day, the decedent executed a deed of the subject property to herself and Mr. and Mrs. Pron as joint tenants.
Mr. Pron testified that from the time the parties moved into the Kolas Court property, he paid most or all of the real estate taxes, performed and/or paid for all repairs and modifications to the subject property (including the addition of a patio, deck, fences, remodeling of bathrooms, etc.), and, in fact, applied for and received homestead rebates[2] as if the property was his own, all *347 with the knowledge and acquiescence of the decedent. At the time of Mrs. Hammerle’s death in 1995, all payments under the purported contract had been made to the decedent, the last payment having been made on April 1,1990.
Mr. Pron also testified that he never sought a deed from Vera Hammerle transferring all interests in the property to only himself and Mrs. Pron. He indicated that from conversations with Mrs. Hammerle he was led to believe that the deed in its current form would protect his interest and that a new deed was not required.
The Director did not produce any witnesses or documentary evidence controverting Mr. Pron’s testimony.

Law and Analysis

N.J.S.A. 54:34-1 levies an inheritance tax on the light or privilege of succeeding to, as distinguished from the right of transmitting, the possession or enjoyment of property or an interest valued at over $500.
For jointly owned property, a transfer inheritance tax is imposed on:
[t]he right of the surviving joint tenant or joint tenants, person or persons, to the immediate ownership or possession and enjoyment of real or personal property held in the joint names of two or more persons .. shall upon the death of one of such persons, be deemed a transfer taxable in the same manner as though such property had belonged absolutely to the deceased joint tenant ... and had been devised or bequeathed by his vrill to the surviving joint tenant or joint tenants, person or persons, excepting therefrom such part of the property as such survivor or smvivors may prove to the satisfaction of the Director of the Division of Taxation to have originally belonged to him or them and never to have belonged to the decedent.
[N.J.S.A. 54:34-1(f).]
The Legislature intended to tax only transfers of a donative nature and not properties that were owned by the donee. See In re Huggins’ Estate, 96 N.J.Eq. 275, 282, 125 A. 27 (Prerog.1924), aff'd sub nom, Fairleigh v. Bugbee, 3 N.J. Misc. 1072, 130 A. 923 (Sup.Ct.1925), aff'd, 103 N.J.L. 182, 134 A. 917 (Err. & App.1926). “The rights of the [Gjovemment are solely dependent on the rights of the taxpayer.” Zwaska v. Irwin, 52 N.J.Super. 27, 33, 144 A.2d 554 (Ch.Div.1958).
*348 Taxpayer claims that for inheritance tax purposes, the property, from the outset, was fully owned by the Prons and was never owned by the decedent. The estate claims that Mrs. Hammerle advanced money for the purchase price of the subject property, intending to make a loan of the purchase money to the Prons and not intending to buy the property for herself. The deed she then received, although absolute on its face, was intended only as security for the loan and, therefore, the decedent held title only as an equitable mortgagee. The question of whether, in fact, Mrs. Hammerle held title only as an equitable mortgagee is resolved by an examination of an oral agreement in relation tc property ownership.
Interests in real property must conform to the requirements of the statute of frauds. In the present action, the interest must conform to the statute of frauds prior to its amendment in 1995, which precluded “the enforceability of contracts involving an ‘interest in or concerning’ real estate unless the agreement is in writing and signed by the party to be charged, or some other person lawfully authorized by the party to be charged.” Brechman v. Adamar of New Jersey, 182 N.J.Super. 259, 263 (Ch.1983) (quoting N.J.S.A. 25:1-5(d) (repealed 1995)); See also Morton v. 4 Orchard Land Trust, 180 N.J. 118, 125, 849 A.2d 164 (2004) (discussing the pre and post repeal law). “A mortgage is essentially security for the payment of a debt that involves real estate.” Chemical Bank New Jersey, N.A. v. City of Absecon, 13 N.J.Tax 1, 8 (Tax 1992) (citing Feldman v. Urban Commercial Inc., 64 N.J.Super. 364, 165 A.2d 854 (Ch.Div.1960)). Contracts entered into for the purchase and sale of real estate also had to be in writing, pursuant to N.J.S.A 25:1-5(d) (repealed by amendment P.L. 1995, C. 360). Hence, a mortgage, as a contractual obligation in real estate, had to be in writing as a conveyance of an interest in land under the statute of frauds. Id.
However, “the statute of frauds was enacted for the protection of the party sought to be charged, and is not available to strangers to the agreement.” Zwaska, supra, 52 N.J.Super. at 33, 144 A.2d 554 (citing McCue v. Deppert, 21 N.J.Super. 591, 91 *349 A.2d 503 (App.Div.1952)). If the parties to a contract are willing to waive the statute’s requirements, a stranger to the contract cannot object. Zwaska, supra, 52 N.J.Super. at 33, 144 A.2d 554.
We conclude from these varying formulations of the doctrine that the statute of frauds will not prevent enforcement of an oral agreement relating to real property if part performance provides a reliable indication that the parties have made an agreement of the general nature sought to be enforced, and in that event parol evidence may be admitted to show the details of the agreement,
[Deutsch v. Budget Rent-A-Car, 213 N.J.Super. 385, 388, 517 A.2d 491 (App.Div. 1986) (detailed citations to The Restatement of Contracts and Corbin on Contracts omitted).]
 In cases where parol evidence is admissible to establish the existence of an equitable mortgage, the evidence must be clear and convincing. See Vreeland v. Dawson, 55 N.J.Super. 456, 462, 151 A.2d 62 (Ch.Div.1959). In Vreeland, the court reiterated that a deed absolute on its face intended only as security for a loan would be “decreed to be operative as a mortgage.” Id. at 465, 151 A.2d 62. See also Humble Oil & Refining Co. v. Doerr, 123 N.J.Super. 530, 551, 303 A.2d 898 (Ch.Div.1973) (recognizing that equity looks to substance rather than form, and that a guarantor or surety who takes property or an interest therein as security for his guarantee is a mortgage thereof in equity). Part performance must be more than the payment of money; there must also be a change of position in reliance on the oral agreement that cannot be compensable by restitution or damages. See Lahue v. Pio Costa III, 263 N.J.Super. 575, 600, 623 A.2d 775 (App.Div.1993). While a simple transfer of mortgage money from respondent to his wife’s parents would not suffice to remove the agreement from the statute of frauds requirement, Feldman v. Warshawsky, 125 N.J. Eq. 19, 20, 4 A.2d 84 (E. & A.1938), payment of rents and an expenditure of $6,000 for interior renovations has been held to be sufficient reliance to establish an oral six-year lease. Lahue, supra, 263 N.J.Super. at 600, 623 A.2d 775 (citing Deutsch, supra, 213 N.J.Super. 385, 517 A.2d 491).
In the present action, the Director argues that decedent’s oral mortgage commitment was not enforceable under the statute of frauds, and hence, the estate may not set forth proofs to establish that the property was fully owned by the Prons. That is *350 incorrect. The Director was not a party to the oral agreement between the Prons and decedent. In Zwaska, the court found that the government, as a judgment creditor, is a stranger within the meaning of the rule, and cannot set up the statute of frauds to prevent the execution, by its debtor, of an oral executory contract, if the latter is willing to perform. Zwaska, supra, 52 N.J.Super. at 33, 144 A.2d 554. The Director argues that Zwaska is distinguishable from the present case, because the government was acting as a lienholder, and in this case, the State was attempting to tax the transfer of property. However, Zwaska reinforces the concept that the government’s rights are dependent on the rights of the taxpayer, whether the government is acting as a lienholder or collecting taxes. The government may not try to prevent taxpayers from proving property was not under their ownership to prevent taxation under N.J.S.A. 54:34 — 1(f). Further, this court finds that even if the statute of frauds was applicable, the payment of $120,000 (the purchase price minus the gift), plus the extensive renovations made by the Prons in reliance on the agreement (including the addition of a patio, deck, fences, remodeling of bathrooms, etc.) evidence of part performance that removes the oral agreement from the statute of frauds.
In reviewing the evidence submitted, this court finds clear and convincing evidence of an equitable mortgage, as found in Vreeland. In Vreeland, the debtor’s father initially purchased land on which to open a private swim club. When the debtor’s father suffered financial losses the land was sold at a sheriffs sale. Thereafter, Dawson, a friend of the debtor’s father, offered to purchase the property, saying that the debtor could pay him back when he was able to. Vreeland, supra, 55 N.J.Super. at 460, 151 A.2d 62. The debtor continued to run the swim club and to make payments to his father’s friend after his father’s death. Eventually, the debtor came into some money and inquired as to the remaining balance. Dawson told the debtor “we will figure it out sometime.” Id. at 462, 151 A.2d 62. Dawson died, and his wife claimed absolute ownership of the property. The court found that:
*351 [t]he rule is firmly established that a deed absolute on its face intended only as security for a loan will be decreed to be operative as a mortgage. Equity will look beyond the written instrument and explore the character of the transaction and the contemporaneous intentions of the parties.
[Vreeland, supra, 55 N.J.Super, at 465,151 A.2d 62.]
The Director argues that Vreeland is distinguishable, because the debtor in Vreeland paid 5% per annum interest to Dawson, all closing costs and real estate taxes. The Director argues in this case that the mortgage payments do not include interest, stating that failure to include interest indicates that an equitable mortgage did not exist. See Titus v. Wallick, 114 N.J. Eq. 171, 168 A. 453 (E. & A.1933). While there is some authority that failure to include interest indicates that a mortgage was not contemplated, the agreement must be viewed as a whole. Ibid. See also, Montgomery v. Beecher, 31 A. 451 (N.J. Ch. 1895); Vreeland v. Dawson, 55 N.J.Super. at 456, 151 A.2d 62.
Testimony that the Prons paid real estate taxes and received homestead rebates on Block 739.02, Lot 9 (the whole of the property, not one portion of the two-family house) is uncontrovert-ed. The fact that the Prons did not pay interest to the decedent is not determinative. The Prons made $120,000 in payments to decedent for which receipts were produced. The fact that Mr. Pron could not recall whether the cash payments consisted of $10, $20, $50 or $100 bills does not diminish the reliability of his uncontroverted testimony.
Director argues that Mr. Pron’s testimony was unreliable, but offered no evidence, either by testimony or documents, to support that conclusion. This court compared the purported signatures of the decedent on the receipts and on her will, executed May 17, 1989.[3] This court finds the signatures to be similar and in some cases, almost identical. With no expert or lay testimony to the contrary, this court determines the signatures on the receipts to be decedent’s.
*352 Finally, the Director argues that the decedent could not have believed that an equitable mortgage existed, because in her will, she bequeathed the property to the Prons, calling the property, “my home.” Conversely, on the very same day she executed the will, assisted by the same lawyer, she executed a deed to herself and the Prons as joint tenants on the property. The fact that $12,222 was still owed to the decedent at that time indicates the decedent’s desire to hold the deed in her name as security until the final payment was made. This is consistent with Mr. Pron’s testimony as to the terms of the oral agreement made between decedent and the Prons.
This court finds that the estate has demonstrated by clear and convincing evidence that an agreement for the purchase and sale of real estate, as well as an equitable mortgage, was entered into by and between the Mrs. Hammerle and the Prons on or about August 8, 1984. This court further finds that the Prons fully performed all of their obligations thereunder. As a result, this court finds that the actual owners of the subject property, as of April 1,1990 (the date of the last payment and prior to decedent’s death, November 15, 1995), were the Prons, and that Vera Ham-merle, at that time, was holder of an equitable mortgage.
As the rights of the “[government are solely dependent on the rights of the taxpayer,” Zwaska, supra, 52 N.J.Super. at 33, 144 A.2d 554, this court finds that the Director is unable to levy an inheritance tax under N.J.S.A. 54:34-1 on the subject property, since the property was not owned by decedent on the date of her death. This court finds that since April 1, 1990, the subject property was owned by the Prons. Only the formality of a deed was left undone.[4] Under N.J.S.A. 54:34-1, the State may not tax *353 “such part of the property as such survivor or survivors may prove to the satisfaction of the Director of the Division of Taxation to have originally belonged to him or them and never to have belonged to the decedent.”
Counsel for plaintiff shall submit an appropriate form of judgment consistent with this opinion pursuant to the five-day Rule.

 The actual total of the calculations amounted to $119,999.99, one penny short. The Division does not suggest this to be significant. In fact, Mr. Pron testified to the lighthearted nature of the exact payments using pennies.

 Homestead rebate applications were made by the Prons for Block 739.02, Lot 9, which was the lot number for the entire two family-unit.

 The Director did not argue that the signature on the will was other than the decedent's. We note that decedent at all times relevant signed her name as Vera Hamerle (not Hammerle, as spelled on the complaint).

 The subject fact pattern is distinguishable from General Trading Company, Inc. v. Director, Div. of Taxation, 83 NJ. 122, 416 A.2d 37 (1980). That court determined that a taxpayer could not avoid tax liability incurred in one year by attempting to reverse a prior business decision in a subsequent year. In the case at bar, the relevant statute, N.J.S.A. 54:3 4-1 (f), addresses the question of ownership and permits a taxpayer to present proof thereof. Taxpayers herein are not arguing tax avoidance, but, rather, are attempting to demonstrate to this court *353 that despite the existence of the deed in the name of decedent as of death, in fact, she did not own the property.